THE CITY OF CHICAGO et al.

v.

THE UNIVERSITY OF CHICAGO.

*Opinion filed October 23, 1907.*

1. ESTOPPEL,—*when a city is estopped to claim that ordinance is illegal.* Upon a bill to enjoin a city from cutting off the water supply to an educational institution, which relies for its relief on an ordinance directing the commissioner of public works to remit and cancel all water rates to charitable and educational institutions, if the city, by its answer, alleges that the city water-works system is private property of the city, conducted as a private enterprise and not as a governmental function, and that it has a right to charge whatever reasonable rates it sees fit, it is estopped to afterwards claim the ordinance to be invalid upon the ground that the city can not give away public property.

2. SCHOOLS—*dormitories, dining halls and club house of a university are part of an educational institution.* Dormitories, dining halls and club houses located together upon a university campus and used for conducting the educational work of the university and not for gain or revenue, are within the meaning of an ordinance remitting water rates to all buildings used immediately for educational purposes, notwithstanding the expense of maintaining such buildings is met, in part, by room rent, board, dues and tuition fees paid by students.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

On May 19, 1902, the city council of the city of Chicago passed the following ordinance:

"The commissioner of public works is hereby directed and instructed to remit and cancel all water taxes and rates heretofore levied and assessed or which may hereafter be levied or assessed against such property of any charitable, religious or educational institution within the city of Chicago as is used in the immediate conduct and carrying on

of the charitable, religious or educational purposes of such institution: *Provided,* the commissioner of public works may require every application for a rebate or remission of said water rates or taxes to be verified by an affidavit of one or more tax-payers of the city of Chicago."

In March, 1905, the city council passed another ordinance in substantially the same words, except that the proviso was omitted and in lieu thereof these words were inserted: "And which is not used for gain or profit, or rented, conducted, maintained or operated for the purpose of producing revenue for such institution."

While the first ordinance was in force a large amount of rates for water used in certain buildings of appellee was charged against it and was not paid. The city's superintendent of water having threatened to cut off the water supply from these buildings if such amount was not paid, the appellee filed the bill in this case for an injunction against such action. After the passage of the second ordinance, and after the hearing on the original bill but before decree, the appellee, by leave of the court, filed a supplemental bill, setting up the passage of the second ordinance and asking the same relief as in the original bill, by injunction against the cutting off of its water supply for default of payment of water rates claimed to be due under the second ordinance.

The bill and supplemental bill allege that the appellee, the University of Chicago, is a corporation organized for the purpose of maintaining and conducting an institution of learning but not for private gain or profit; that in pursuance of such purpose it has acquired land and erected a large number of buildings wherein to conduct and carry on its said institution of learning, and that all the water rates above mentioned were for water for various of said buildings which are owned in fee by appellee, are a part of its educational institution and are used by appellee in the immediate conduct and carrying on of its educational purposes. The supplemental bill also avers that the said property is

not used for gain or profit, or rented, conducted, maintained or operated for the purpose of producing revenue for such institution. The answer denies that all the buildings of appellee to which said water was supplied are used by appellee in the immediate conduct and carrying on of the educational purposes of said institution, and avers that many of said buildings are used solely for the purpose of deriving gains and profits therefrom. Upon a hearing the relief asked was granted. The Appellate Court affirmed the decree of the circuit court, and this further appeal is prosecuted.

WILLIAM D. BARGE, (JAMES HAMILTON LEWIS, Corporation Counsel, of counsel,) for appellant.

JUDAH, WILLARD & WOLF, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

It is first contended by appellants that the ordinances providing for the remission of water rates to charitable, religious or educational institutions are invalid because the city cannot give away any public property. The question does not arise on this record. The answer expressly avers that the system of water-works is the private property of the city, conducted as a private enterprise and not as a governmental function, and that the city has full right and authority to charge and collect from its patrons whatever rates it may see fit to fix, so long as they are reasonable, and to designate institutions to which it will furnish water free. Having alleged the validity of the ordinance in its pleading and proceeded to a hearing on that theory, the city cannot now be heard to say that the circuit court erred in adopting its view.

It is contended that the dormitories, the dining hall and the club house known as the "Reynolds Club" are not used in the immediate conduct of the educational purposes of the institution and are used for the purpose of producing reve-

nue. These buildings, and the others against which water
rates are charged, are all situated together within the uni-
versity campus. Study halls are not provided, but the stu-
dents occupy the dormitories for study as well as for living
rooms. Some member of the faculty lives in each and main-
tains control and supervision of the students therein. The
students pay tuition and room rent, but there is a very large
deficit between the amount of the fees so received and the
cost of maintaining the institution. The students who board
at the dining hall pay merely the cost of furnishing board,
and there has always been a deficit. The club house was
built with money contributed for that purpose. Members
pay nominal dues, which are not sufficient to pay for the
maintenance of the club. It is used exclusively by students
and alumni for recreation and social purposes and for vari-
ous student meetings. All these uses are in the immediate
carrying on of the educational purposes of the university.
For hundreds of years the dormitories and the dining halls
have been an essential part of universities and colleges.
When the American colonies began founding universities
and colleges, the first step was the erection of buildings for
lodging and feeding the students while they pursued their
studies under the supervision of the college authorities, and
the courts have uniformly held that buildings used by col-
leges exclusively as dormitories and dining halls for its stu-
dents, or premises occupied by the president or professors
and their families, are devoted to the purposes for which such
institutions are organized. *Yale University* v. *New Haven,*
71 Conn. 316; *Phillips Academy* v. *Andover,* 175 Mass.
118; *Harvard College* v. *Cambridge Assessors,* 175 id. 145.

The case of *Monticello Female Seminary* v. *People,* 106
Ill. 398, went much further. There the seminary was the
owner of about seventy-five acres of land, part of which was
used for gardening, part for orchard, part for raising hay,
corn and oats, part for pasturage, and part by a building oc-
cupied by the superintendent of grounds and out-door work

of the seminary, and, when necessary, by the students. The court said: "The evidence further shows that all this property is necessary for the proper carrying on of the institution; that said tracts of land are used exclusively for the purposes of the institution, and that no part of the same has been leased or otherwise used with a view to profit; that it is necessary, in connection with the institution, to have cows to supply milk for the scholars and teachers, all of whom, numbering about 175 persons, reside and live within and upon the grounds of the institution; that horses are required to do the necessary hauling connected with the seminary, and that all the hay, corn and oats raised on the place go to the feeding of the stock thereon; that nothing is ever sold off the premises, and that what is raised is but a partial supply for the institution; that the object of the institution is, as far as possible, to make it a self-sustaining one, and that what is realized over and above actual expenses is used as a fund for the education of indigent females. We do not see why the facts of this case do not bring these lands within the very words of the exemption from taxation of the constitution and the legislation upon the subject. They form one connected body of land, upon which the seminary buildings are situated. They are not lands which are leased by the institution or otherwise used with a view to profit, but they are used strictly in the carrying on of this seminary of learning and are used exclusively for that purpose, and we think they should be held, under the statute, to be exempt from taxation."

It is also claimed that because of the charge for room rent and for meals and for membership in the Reynolds club the buildings are used for the purpose of producing revenue. This position is also answered by the case last cited, which holds that the property there under consideration was not used with a view to profit. The fact that students are charged tuition fees, rent for the rooms occupied and the cost of food consumed does not affect the question. These

items are all of the same character, and together constitute the charge of the university for the teaching and education of its students in its buildings and under its authority. "The fact that certain sums are paid for the use of rooms occupied does not alter the character of the occupation. The church is none the less a church because the worshipers contribute by way of pew rent, the hospital is none the less a hospital because the beneficiaries contribute somewhat towards its maintenance, and the college is none the less a college because its beneficiaries share the cost of maintenance; and it is immaterial whether such contribution is lumped in one sum or apportioned to sources of expense, as tuition, room rent, lecture fee, dining halls," etc. (*Yale University* v. *New Haven, supra.*) Accordingly it was held in that case, "student's fees, whether apportioned to room rent or tuition, cannot be treated as income of real estate, and that land occupied and reasonably necessary for the plant of the college is not productive real estate."

We find no error in the decree, and it will be affirmed.

*Decree affirmed.*