WHEATON COLLEGE *vs.* INHABITANTS OF NORTON.

Bristol.   November 27, 1918. — February 26, 1919.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & PIERCE, JJ.

*Tax,* Exemption.   *College.*

Under St. 1909, c. 490, Part I, § 5, cl. 3, in order to show a right of a city or town to tax the property of a literary, benevolent, charitable or scientific institution used for the purposes for which such institution was incorporated, where the institution failed to bring in to the assessors the list and statement required by § 41 of the same chapter, it is necessary for such city or town to show that the omission to bring in the list and statement was wilful.

Where the treasurer of a literary institution knew that he was obliged to file a list in accordance with a notice received from the assessors and his delay in doing so was caused by a past arrangement made between the town and the institution in regard to assessment and by negotiations for a new arrangement, a judge hearing a petition for the abatement of a tax assessed to the institution by the town is warranted in finding that the failure to make the return within the time required by § 41 was not a wilful omission.

If a college that is a literary institution within the meaning of St. 1909, c. 490, Part I, § 5, cl. 3, buys certain land, with a house and barn on it, which adjoins the college campus on one side, and its purpose in doing so is (1) to prevent the acquisition of the land by persons who might be undesirable neighbors, (2) to acquire another house for a professor and (3) to open a road across the land from a public street to its power house for hauling coal and other heavy articles without crossing the main portion of the campus, and if the house, although at first made suitable for and used by a professor, afterwards is occupied by a man employed by the college, who is not required to live there but hires it as a dwelling house and pays rent and who does not use the barn and uses only so much of the land as is required for a yard to the house, and if later the house is occupied by a family who have no connection with the college, but the use of the way to the power house has a direct effect in promoting the purposes for which the college was established, the land and the buildings thereon

are subject to assessment and taxation, with the exception of the way thereon, which is exempt from taxation.

In St. 1909, c. 490, Part I, § 5, cl. 3, describing the kinds of property of literary. institutions that are exempted from taxation, the words, "real estate purchased by them with the purpose of removal thereto, until such removal, but not for more than two years after such purchase," refer to a change in the *situs* of the institution from one tract of land to another, and do not exempt from taxation land with a house on it that is bought by a college with the idea of converting the house into a dwelling for a professor until this actually has been done.

Where another house owned by the college mentioned above was used as a lodging house for the "chef, janitors, kitchen employees" and the gardener of the college, and no money was paid for their rooms and they were required to lodge there, and where also a former employee of the donor of the house was permitted to live in two or three rooms at a rent of $5 per month, because it was understood to be the wish of the donor that she should be permitted to live there as long as she desired to do so, and where it was the purpose of the college to use the rooms in the house as they became empty as lodging places for other male employees of the college who had been taken care of elsewhere, it was *held*, that the occupation of the former employee of the donor at the small or nominal rent was in its nature temporary and was merely incidental to the main and principal use of the house for persons charged with duties to the college and required to live there, and that this house was exempt from taxation.

In the same case it appeared that the engineer's house adjoined the college campus and was occupied as a dwelling by the chief engineer of the college, who had charge of the heating, lighting, and electrical plant, operated from the power house of the college, that the chief engineer was required to live in this house and paid no rent and that no deduction from his compensation was made for the use of the house. It also appeared that the superintendent's house was directly opposite the campus and was occupied by the superintendent of grounds and buildings, who was required to live in it, that he paid no rent and that no deduction on that account was made from his wages. *Held*, that the occupation of these houses by the engineer and the superintendent was solely by reason of the official performance of their respective duties and was essential thereto, and that the property, being used for the purposes of the college, was exempt from taxation.

In the same case it appeared that a two and one half acre lot consisted of a grove of pine trees of old growth, that it was free from underbrush, had a few benches, was unenclosed and was used by the students and the townspeople, and that the only college purpose for which it was used was the recreation of students who wished to walk, stroll or saunter there. *Held*, that this tract of land was exempt from taxation. Following *Amherst College* v. *Amherst*, 193 Mass. 168.

In the same case it appeared that there were two woodlots that had been devised to the college with other parcels of land by a benefactor, that the college was ready to sell these lots if a suitable offer was made, and that the only use made of them was the cutting of some lumber for making repairs and for bookcases and shelving and also of some firewood. *Held*, that these lots were exempt from taxation.

In the same case it appeared that another woodlot devised to the college by the same benefactor was ordinary wild woodland, that a highway that ran through

these woods and a wood path leading into them were favorite walks of the pupils, and that the college authorities deemed it important for the health and enjoyment of the students that they should have ample opportunity for recreation in the open air. *Held,* that the occupation of this woodland was directly to accomplish one of the objects for which the college was incorporated and that the lot was exempt from taxation.

PETITION, filed in the Superior Court on June 7, 1915, under St. 1909, c. 490, Part I, § 77, by Wheaton College, incorporated as a literary institution within the meaning of St. 1909, c. 490, Part I, § 5, cl. 3, to abate certain taxes assessed upon its real estate by the town of Norton in the year 1914.

The case was referred to a commissioner appointed under § 79 of the same statute, who filed a report. The parties filed a stipulation containing additional facts and agreeing that they should constitute "a statement of agreed facts, in addition to the commissioner's report, and that the court may draw inferences of fact."

The case was heard by *Morton, J.,* who made certain findings, which are stated in the opinion. He made an order that the tax assessed upon the petitioner's property be abated in the sum of $289.44 in accordance with his findings. The town of Norton appealed.

St. 1909, c. 490, Part I, § 5, cl. 3, is as follows: "The personal property of literary, benevolent, charitable and scientific institutions and of temperance societies incorporated within this Commonwealth, the real estate owned and occupied by them or their officers for the purposes for which they are incorporated, and real estate purchased by them with the purpose of removal thereto, until such removal, but not for more than two years after such purchase. Such real or personal property shall not be exempt if any of the income or profits of the business of such corporation is divided among the stockholders or members, or is used or appropriated for other than literary, educational, benevolent, charitable, scientific or religious purposes, nor shall it be exempt for any year in which such corporation wilfully omits to bring in to the assessors the list and statement required by section forty-one."

The case was submitted on briefs.

*E. S. White & A. R. White,* for the town of Norton.

*H. E. Warner, P. L. Stackpole & E. C. Bradlee,* for the petitioner.

PIERCE, J. On appeal to the Superior Court under St. 1909, c. 490, Part I, § 77, from a refusal of the assessors of the respond-

ent town to abate taxes upon certain real estate of the petitioner, the presiding judge appointed a commissioner to hear the parties and report the facts. Upon the coming in of the report, which is *prima facie* evidence of the facts therein found, St. 1909, c. 490, Part I, § 79, the case was heard by a judge of the Superior Court upon an agreement that the commissioner's report and "agreed modifications" thereof should constitute an agreed statement of facts, and that the court should have the right to draw inferences of fact therefrom. It was agreed that the application for abatement was made within six months from the date of the tax bill and that the appeal was entered in the Superior Court on the first return day after the expiration of thirty days from the time that notice of the refusal to abate was given. It was also agreed that Wheaton College is a literary institution within the terms of St. 1909, c. 490, Part I, § 5, cl. 3. It was also agreed that the taxes of the town of Norton for the year 1914 were properly levied; that the assessors posted the proper notices requiring all persons or corporations to bring in to the assessors on or before May 15, 1914, true lists of all real and personal estate held by them for literary, temperance, benevolent, charitable or scientific purposes on April 1, 1914, together with statements of the amount of all receipts and expenditures during the year next preceding, said list to be in accordance with blanks furnished by the tax commissioner.

It appears from the agreed facts that the petitioner did not bring in to the assessors of the respondent town the list and statement required by St. 1909, c. 490, Part I, § 41, to be brought in "not . . . later than the first day of July then following [the notice of the assessors] unless the assessors for cause shown extend the time to the first day of August," but filed the schedules during October, 1914. Concerning the delay or omission to file the schedules, the agreed facts state that most of the real estate was devised to the college by Mrs. Wheaton; that at the time of her death the college authorities and the assessors met and arrangement was made as to which real estate should be considered to be used for college purposes and so exempt, and what should be taxed; that all the parcels of land except one, and most of the buildings now in dispute, were at that time placed on the taxable schedule; that the schedules, either in blank or filled up by the assessors in

accordance with the arrangement, were annually sent to the college, there signed, and returned to the assessors; that in 1913 this was done in the autumn; that when the 1913 tax bill was paid the college treasurer sent a letter to the assessors stating that changes had been made in the use of some of the property on the taxable schedule and requesting that the assessors revise the list; that no reply was made to the letter and nothing was done until June, 1914, when the treasurer again wrote to the assessors setting out in detail the properties he claimed were exempt, as being used for college purposes, and requesting that they be placed on the exempted schedule; that this letter was not answered, but later in the summer the treasurer and the chairman of the assessors met and the treasurer was requested to appear before the board; that he did so and explained what was desired; that on September 16, 1914, before the tax bills were sent out, the chairman of the assessors sent a letter to the treasurer declining to make any changes and enclosing schedules already filled in by the assessors; and soon after this, the chairman in meeting the treasurer reminded him that the schedules had not been filed, and added, "I suppose you are waiting to see what we do about those schedules in order to know how to make them out." The treasurer knew he was obliged to file the list in accordance with the notice, but the delay was caused by the past arrangement and negotiations for a new arrangement. Upon these facts we think the presiding judge was warranted in further finding, as he did, "that the petitioner had reasonable cause to believe that it was not required to make such return within the time required by § 41 by reason of past arrangements with the assessors and by negotiation with them for new arrangements, and that the failure to make the return within the required time was not [a] wilful [omission]."

The power to tax property used directly for literary, benevolent, charitable and scientific purposes by institutions incorporated in this Commonwealth, is dependent upon proof of a wilful omission in fact to bring in to the assessors the list and statement required by § 41, *supra,* and the burden of proof rests upon the city or town to prove that fact, even if the lists have not been furnished. *Masonic Education & Charity Trust* v. *Boston,* 201 Mass. 320, 326. *Milford* v. *County Commissioners,* 213 Mass. 162, 164.

The judge found and ruled that the dominant purpose of the occupation of the Holden lot, house and barn, the Bolles house, the double house or infirmary and lot, the south or white house and lot, the new house or engineer's house, the brick or superintendent's house and lot, the two and one half acre lot near Lauriatt's, the Mansfield woods, the Knowles woodlot, the Neck woods and the Wheaton farm was directly to accomplish some one of the objects for which the petitioner was incorporated. He found and ruled that the Wheaton Inn, barn, office and lot, and "Adams Sprout" "Parker Meadows" the "Island" and "Mowry Meadow" were not directly held for such a purpose. The respondent appealed from an order of the presiding judge that the tax upon the petitioner be abated in the sum of $289.44, and now contends as a matter of law that the agreed facts and the inferences that may properly be drawn therefrom do not warrant a finding that the Holden lot, house and barn, the south house, the superintendent's house, the engineer's house, and all the tracts of woodland were occupied for the purposes for which the petitioner was incorporated.

The Holden land, house and barn adjoin the campus on one side and were purchased in 1913. The purpose of the college in so doing was threefold: (1) It desired to prevent the acquisition of the land by persons who might become undesirable neighbors; (2) the college needed another house for a professor's house; and (3) the college desired to open a road across the land from Pine Street to the power house for hauling coal and other heavy articles without crossing the main portion of the campus. The house was one that could be made suitable for a professor's house, and before April 1, 1914, was in fact made suitable for such a purpose and was occupied by a professor. On April 1, 1914, the property was occupied by a man employed by the college. He was not required to live there but hired the premises as a dwelling house and paid rent. He did not use the barn and used only so much of the land as was required for a yard to the house. Later in 1914 the house was occupied by a family who had no connection with the college. The way was more convenient than the college could have got without buying the land. It is plain that the use of the way had a direct effect in promoting the purposes for which the college was established. And it is manifest that the land and the buildings

thereon, other than the land occupied as a way from Pine Street to the power house, were not occupied directly for the purposes for which the college was incorporated, but indirectly through the income derived from its use by tenants paying rent. *Chapel of the Good Shepherd* v. *Boston,* 120 Mass. 212. *Lynn Workingmen's Aid Association* v. *Lynn,* 136 Mass. 283. *Salem Lyceum* v. *Salem,* 154 Mass. 15. *Emerson* v. *Milton Academy,* 185 Mass. 414.

Relying on St. 1909, c. 490, Part I, § 5, which reads: "The following property and polls shall be exempted from taxation: . . . Third, . . . real estate purchased by them with the purpose of removal thereto, until such removal, but not for more than two years after such purchase," the petitioner claims the land and buildings are exempt because one of the purposes of the college in acquiring title to the land was to convert the house thereon into a dwelling for a professor, as it did after April 1, 1914. The contention is unsound; the words "purchased . . . with the purpose of removal thereto," naturally mean a change in the *situs* of the institution from one tract of land to another, and do not mean other land purchased for college purposes. *New England Hospital for Women & Children* v. *Boston,* 113 Mass. 518. The result is that the Holden land, and buildings thereon, were subject to assessment and taxation on April 1, 1914, with the exception of the way thereon which is exempt from taxation. *Cambridge* v. *County Commissioners,* 114 Mass. 337.

The south or white house on April 1, 1914, was used as a lodging house for the "chef, janitors, kitchen employees, gardener" of the petitioner. No money was paid by them for their rooms and they were required to lodge there. A former employee of Mrs. Wheaton, the donor of the house, is permitted to live in two or three rooms at a rent of $5 per month, because it was understood to be the wish of the donor that she should be permitted to do so as long as she desired. The purpose of the petitioner as found by the commissioner was to use these rooms as they became empty as lodging places for other male employees who are taken care of elsewhere. It is clear the occupation of the former employee was in its nature temporary and merely incidental to the main and principal use of the house by persons charged with duties to the college and required to lodge there. The small, and manifestly nominal, rental paid by the employee cannot reasonably require

a ruling that as a matter of law the rooms so occupied were devoted to the business purpose of receiving rent for the use of property.

The new house, or engineer's house, stands on Howard Street and adjoins the college campus. On April 1, 1914, it was occupied as a dwelling house by the chief engineer of the college, who has charge of the heating, lighting and electrical plant. The college supplies its own heat and electric light from its power house, and requires the engineer to live in this house. The engineer pays no rent and no deduction is made from his compensation for the use of this house. The superintendent's house is directly opposite the campus and was occupied by the superintendent of grounds and buildings. He is required to live in this house; he pays no rent and no deduction is made from his wages. The occupation of these houses by the engineer and the superintendent had reference solely to the official performance of the respective duties of the engineer and the superintendent, and was essential thereto. Such occupation does not change the dominant purpose of the use of the property from a direct to an incidental benefit. *Harvard College* v. *Cambridge*, 175 Mass. 145, 148. *Emerson* v. *Milton Academy, supra.*

The two and one half acre lot on April 1, 1914, was a grove of old growth pines; it was free from underbrush, had a few benches, was unenclosed, and was used by students and townspeople. It was not used for college purposes except for recreation purposes for students who wished to walk, stroll or saunter there. The judge rightly found and ruled that this tract was exempt within the rule laid down in *Amherst College* v. *Amherst*, 193 Mass. 168.

The Mansfield woods and Knowles woodlot were among numerous parcels of land devised to the college by Mrs. Wheaton. The college was prepared to sell them in 1914 if a suitable offer was made. The only use made of the lots was the cutting thereon of some lumber for the making of repairs, bookcases, shelving, etc., and some wood for firewood. The judge properly held these tracts to be exempt from taxation within the rules laid down in *Wesleyan Academy* v. *Wilbraham*, 99 Mass. 599, *Mount Hermon Boys' School* v. *Gill*, 145 Mass. 139.

The Neck woods was devised to the college by Mrs. Wheaton. It is ordinary wild woodland. The commissioner found that the

highway running through these woods and the wood path running into them are favorite walks of the pupils, and that the college authorities deem it important for the health and enjoyment of the students and consequently essential to the maintenance of the college and the accomplishment of its purposes that the pupils have ample opportunity for recreation in the open air. The finding and ruling of the judge that the occupation of this tract was directly to accomplish one of the objects for which the petitioner was incorporated is supported by *Amherst College* v. *Amherst, supra,* and by *Emerson* v. *Milton Academy,* 185 Mass. 414.

It results that the order of the Superior Court should be modified to refuse an abatement of the tax assessed on the Holden land and buildings thereon, exclusive of the way: and that so modified it is affirmed.

*So ordered.*