STATE Ex Rel., EVELAND, et al, Plaintiff's, v. ERICKSON, County Auditor, Defendant (FIRST CONGREGATIONAL CHURCH OF PIERRE, Intervenor.)

(182 N. W. 315.)

(File No. 4863.   Opinion filed March 25, 1921.)

1.   **Property of Religious Society, Or Used "For Religious Purposes," Whether Exempt—Constitution, Statute.**

Under Const., Art. 11, Sec. 6, providing that the legislature shall by general law exempt from taxation property used exclusively for school, religious, cemetery and charitable purposes, and Laws 1919, Chap. 106, providing that all property belonging to any religious society, or used exclusively for

religious purposes, is exempt from taxation, held, that a church parsonage located upon a tract which is a portion of a larger tract upon which a church stands, the parsonage being used by the minister rent free but in part consideration for his services as minister in charge of the religious work of his church society, is exempt from taxation; this against the contention that the statute wherein it purports to exempt property merely because it belongs to a religious society is unconstitutional; that such parsonage property was "used exclusively for religious purposes" within the meaning of constitution and statute.

2. **Same—Religion, Education, As Co-Pillars of Civilization—New England Precedent—Religious Worship, Morality, Intelligence, Public Schools And Religion As Promotive—Whether Liberal Or Strict Construction Applicable—Rule Stated.**

Following the precedent of Massachusetts, mother of our public school system and leader in religious life, that "It is the right as well as the duty of all men in society, * * * to worship the Supreme Being," the framers. of our Constitution, recognizing the importance of religion and education, declared in Const., Art. 6, Sec. 3, that our State motto shall be "Under God the People Rule;" in Art. 8, Sec. 1, they declared that stability of our form of Government depends "on the morality and intelligence of the people," that it is the duty of "the legislature to establish and maintain a general and uniform system of public schools," and "to adopt all suitable means to secure to the people the advantages and opportunities of education;" thus religion and education have been recognized as foundation pillars of American civilization; and it is questionable whether strict construction should apply to constitutional provisions relating to exemptions of property used for religious or educational purposes, but rather that a liberal construction should be applied to both constitutional and statutory provisions relating thereto; that, even though strict construction be applied, yet it must be a reasonable construction, the product of right and clear thinking; and in construing such provisions court, while applying rules of strict construction, yet follow the guide-post of common sense.

3. **Taxation—Property Used For Religious Purposes, "Purposes," Meaning Of.**

The word "purposes" as used in the tax-exemption provisions of our Constitution and statute, is properly defined as that which one sets before himself as an object to be attained; the end or aim to be kept in view, in any plan, measure, exertion, or operation; design; intention; which definition has been judicially recognized.

4. **Taxation—Tax-Exemption Statutes—Property, Use Of, Dis-**

tinguished From Purpose, "Primary Use," "Primary Purpose," Meaning of "Primary."

The word "primary" when used in connection with the word "purpose" or "use" of property, while having many shades of meaning varying with the subject word to which it is applied, is properly defined as first in order of time or development or in intention; primitive; fundamental; original; and the primary uses of buildings, considered without reference to purposes with which such uses may be connected, may be the same, while the primary purposes lying back of such uses may be different; hence, the "primary purpose" is that which is first in intention; which is fundamental; hence, in determining whether the "use" to which property is put is for a religious "purpose," it should be determined what is first, or fundamentally, in the intention of the owners thereof when putting same to use; and, while each particular item of property constituting a group has a use peculiar to itself, yet the primary purpose for which all was provided and is used, should be the guide as to the purpose of its use. So held, in interpreting our Constitution and statute (supra) as exempting a church property including an adjacent parsonage from taxation.

5.    Taxation—Church Property, Use For Religious Purposes, Whether Parsonages Included As Exempt—Variant State Constitutional, Statutory, Provisions Considered, And Criticized—Rule Announced.

In determining the authoritative force of a judicial decision on the subject of exemption from taxation of parsonages as included in property used for a religious purpose, the particular constitutional or statutory provision under consideration should be considered; and examination discloses that the language of tax-exemption laws, whether found in constitutions or statutes, is similar to ours in very few states; in some, exemption is made of "places of religious worship," "buildings erected for religious work," "churches * * and other public buildings for religious worship;" and judicial decisions interpreting such provisions are not authoritative in determining the construction to be put upon Const., Art. 11, Sec. 6. Moreover, as in the case of certain judicial decisions in other states, the court considered only the immediate use to which the building was put, and not the fundamental or primary purpose because of which the building was provided and put to such use. That (following the dissent in Monticello Seminary v. People, 106 Ill. 398, 46 Am. Rpts. 702) it does not require resort to rule of liberal construction to hold that property acquired, owned and used exclusively for religious purposes within the meaning of constitution and statute; that the constitutional exemption is not

restricted 'to property used exclusively for public worship but embraces all property exclusively—that is primarily—used for religious purposes; that the purpose of building church houses is to promote the cause of religion, which requires services of a pastor or minister, and it is customary to provide a place for him to live; sometimes such provision is made part of or connected with the church building, and sometimes, as in the instant case, a house is built on a lot adjoining the church lot; yet it is part of the plan of the congregation to benefit mankind by preaching and teaching religion; and there is nothing in the constitution or statute exempting church property, which limits exemption from taxation to that necessarily used for public worship. The foregoing is a sound rule for determining all questions of tax-exemptions under our Constitution.

Gates, J., not sitting.

Original proceding in mandamus by the State of South Dakota, upon the relation of H. L. Eveland, H. C. Preston and Hugh Smith, constituting the State Tax Commission, against John P. Erickson, as County Auditor of Hughes County, South Dakota, defendant, and the First Congregational Church of Pierre, a corporation, intervenor, to compel defendant County Auditor to place upon the tax lists two certain tracts of land situated in Hughes County. Writ denied.

*Byron S. Payne,* Attorney General, and *E. D. Roberts,* for Plaintiff.

*Harry Horner,* State's Attorney, for defendant County Auditor.

*Howard G. Fuller,* for Intervenor.

*John Sutherland,* as Amicus Curiæ.

(1) To point one of the opinion, Intervenor cited: State ex rel. v. Johnston (Mo.) 21 L. R. A. (N. S.) 171; Lutheran Hospital Ass'n. v. Baker (S. D.) 167 N. W. 148; St. Pauls Church v. City of Concord (N. H.) 27 L. R. A. (N. S.) 910, 912.

(2) To point two, Intervenor cited, re liberal construction: 19 L. R. A. 291 (notes); 12 C. J. 701, 702.

WHITING, J. Relators seek, by mandamus, to compel defendant, as county auditor, to place upon the tax lists two certain tracts of land situate in his county. The following are the facts which we deem material. Each tract of land is owned by a church society, and situate thereon is a dwelling owned by such

society and occupied as a parsonage by its minister; each tract is a portion of a larger tract, which entire tract would be exempt from taxation—because of a church situate thereon—if no part thereof were occupied by such parsonage; each minister receives the use of his parsonage free of rent charge, but in part consideration for the services which he performs as the minister in charge of the religious work of his particular church society.

Section 6 of article 11 of our state Constitution provides that:

"The Legislature shall, by general law, exempt from taxation, property used exclusively for * * * school, religious, cemetery and charitable purposes. * * *"

Chapter 106, Session Laws of 1919, specifically exempts from taxation—

"all property belonging to any * * * religious society, or used exclusively for * * * religious purposes."

Relators contend that the property in question is not used exclusively for religious purposes, and that such portion of chapter 106, supra, as purports to exempt property merely because it belongs to a religious society, is unconstitutional. The only question that we find necessary to consider is whether or not a tract of land upon which is situate a parsonage, owned and used as above described, is property "used exclusively for religious purposes."

[1, 2] Relators contend that laws relating to the exemption of property from taxation should be strictly construed. They argue that it is the duty of all property owners to share in the support of the government; that exemption from taxation is the exception and not the rule; and that, before any one can claim the benefit of an exemption, it is incumbent upon him to bring himself or his property clearly within the exception.

Massachusetts, the mother of our great public school system, also led in religious life. Nearly a century and a half ago she announced in her fundamental law that:

"It is the right as well as the duty of all men in society, * * * to worship the Supreme Being, the great Creator and Preserver of the Universe." Const. Mass. pt. 1, art. 2.

The framers of our Constitution, recognizing the importance of religion and education, declared in section 1 of article 21

that the motto of this state shall be "Under God the People Rule." In section 1 of article 8 they declared that the stability of our form of government depends "on the morality and intelligence of the people;" that it is the duty of "the Legislature to establish and maintain a general and uniform system of public schools;" and that it is its duty "to adopt all suitable means to secure to the people the advantages and opportunities of education." Thus we see how, during the whole history of our nation, religion and education have been recognized as the foundation pillars of American civilization. We question whether the rule of strict construction should have any place in determining the intention of those who framed and who adopted those provisions of our Constitution relating to exemptions of property used for religious or educational purposes; it would almost seem to us that, in the light of the other provisions to which we have referred, it might well be held that a liberal rather than a strict construction should be applied to our constitutional and statutory provisions in relation to exemption from taxation of property used for school and religious purposes. But, even if the rule of strict construction is to be adhered to, yet, as was said by the court in State ex rel. v. Johnston, 214 Mo. 656, 113 S. W. 1083, 21 L. R. A. (N. S.) 171:

"Strict construction must still be a reasonable construction, the product of right and clear thinking, or else reason is no longer the life of the law. * * * In getting at the meaning of the constitutional and statutory exemptions, courts, while applying the rules of strict construction, yet take the road the guide-post of common sense points."

[3] What is meant by the word "purposes" as used in the tax exemption provisions of our Constitution and statute? Webster defines purpose as:

"That which one sets before himself as an object to be attained; the end or aim to be kept in view in any plan, measure, exertion, or operation; design; intention."

This definition has been recognized as correct by the courts. Loftin v. Watson, 32 Ark. 414; Ex parte McCoy, 10 Cal. App. 116, 101 Pac. 419. In Sawter v. Shoenthal, 81 N. J. Law, 197, 80 Atl. 102, "purpose" is defined as:

"Something placed before the mind as an aim, or desideratum."

[4]   It seems to us that some courts, in placing constructions upon tax exemption statutes, have fallen into error through a consideration of the mere use as distinguished and disconnected from the purpose of the use of property.  They speak of "primary use," and lose sight of "primary purpose," and this especially when they are construing statutes relating to the exemption of property used for religious purposes.  The word "primary" has many meanings and shades of meanings, varying in accordance with the subject word to which it is applied.  Thus the primary uses of two buildings when considered without reference to the purposes with which such uses may be connected may be the same; yet the primary purposes lying back of such uses may be entirely different.  Webster defines "primary" as:

"First in order of time or development or in intention; primitive; fundamental; original."

When we couple the above definitions of "purpose" and "primary," it is clear that "primary purpose" is that which is first in intention; which is fundamental.  It follows that, in determining whether the "use" to which certain property is put is for a religious "purpose" we must, in each case, determine what is first, or fundamentally, in the intention of the owners of such property when putting same into use.

We have situate near Pierre a large tract of land owned by the federal government.  On this tract are several dwelling houses, barns, a heating plant, an office building, a dining room, a storehouse, a dormitory, an auditorium, a building wherein are classrooms.  Among the personal property kept thereon are horses, cattle, and hogs.  There are lands used for pasture, and other lands for raising grain and vegetables.  Each particular item of property has a use peculiar to itself, and yet the primary purpose for which all was provided and for which all is used— the purpose that was first in the intention of the government, the fundamental purpose—was the establishment of an educational institution for the education of the wards of the government. Who is there to question but that all this property is being made use of exclusively for "school purposes?"

A study of the decisions of the various courts will disclose

that the courts have almost uniformly looked to find and been controlled by that purpose which was first in the mind or intention of those who owned and used the property when such courts have been called upon to construe statutes providing for the exemption of property "used exclusively for school purposes," or statutes having some similar provision. Thus in Minnesota, where it was provided that grounds attached to educational institutions, and which were necessary for their proper occupancy, use, and enjoyment should be exempt, the court held, in Ramsey County v. Macalester College, 51 Minn. 437, 53 N. W. 704, 18 L. R. A. 278, that land, upon which were situate the residences of professors, was exempt. Under constitutional provisions worded identically as ours, it was held, in Monticello Seminary v. People, 106 Ill. 398, 46 Am. Rep. 702, that, where the seminary in question was originally located upon an eight-acre tract of land, and since three other tracts aggregating some 75 acres in all had been acquired, those tracts were all being used exclusively for school purposes. In that case it appeared that one part of this land was used for gardening, to supply vegetables for the institution, one for orchard purposes, one for raising grain and hay to feed the stock that was used in connection with the institution, one for pasture and woodland. Of the three tracts above mentioned, one 40-acre and one 20-acre tract were used for no other purposes than those just above mentioned. Upon the other tract there was a building occupied by the superintendent of the grounds; this tract was laid out in walks, avenues, etc., and used for the exercise and benefit of the scholars. It was shown that the produce of all kinds, taken from the land, was used for supplying the scholars and teachers, all of whom resided anl lived within and upon the grounds of the institution. Under these facts the court said:

"We do not see why the facts of this case do not bring these lands within the very words of the exemption from taxation of the Constitution and legislation upon the subject. They form one connected body of land, upon which the seminary buildings are situated. * * * They are used strictly in the carrying on of this seminary of learning, and are used exclusively for that purpose, and we think they should be held, under the statute, to be exempt from taxation."

This decision was followed by the same court in Chicago v. University of Chicago, 228 Ill. 605, 81 N. E. 1138, 10 Ann. Cas. 669. In People ex rel. v. Reilly, 85 App. Div. 71, 83 N. Y. Supp. 39, and in People ex rel. v. Mezger, 98 App. Div. 237, 90 N. Y. Supp. 488, the court held that land used for recreation, skating ponds, swings, to produce garden stuff, hay and timber, land occuped by a power house, bowling house, dwelling of an engineer, was all property used exclusively to carry out the educational purposes of the corporation. To the same effect is the decision in Coloradodo Seminary v. Arapahoe County, 30 Colo. 507, 71 Pac. 410. In Harvard College v. Cambridge, 175 Mass. 145, 55 N. E. 844, 48, L. R. A. 547, the court held as exempt the residences of the president and professors upon the ground—
"that the principal or dominant consideration in regard to the accupation of the houses * * * had reference to the performance of their duties * * * rather than to the private benefit which they would receive, * * * and * * * that the occupancy was for the purpose for which the college was incorporated."

In this case the court distinguished the law before them from that relating to exemption of property used for religious purposes, and which had been construed in Third Congregational Society v. Springfield, 147 Mass. 399, 18 N. E. 68, wherein it had been held that a parsonage was nonexempt; and the court called particular attention to the fact that the law, before the court in the former case limited exemptions "to houses of religious worship only."

[5]    But it is contended that the decisions of the court, in relation to the exemption of property used for religious purposes, are uniform in holding that parsonages are not exempt. In determining the authoritative force of a decision upon this subject, it is well to note the particular constitutional or statutory provision under consideration so as to determine whether there is not ground for making a distinction such as that noted in Harvard College v. Cambridge, supra. An examination discloses that the language of the tax exemption laws, whether found in the Constitutions or statutes, is similar to ours in very few of the states. Thus we find laws exempting "places of religious worship," buildings erected for religious work," "churches * *, * and other public buildings for religious worship." Relators have cited several cases, chief among them being First Congregational Church

v. Board of Review, 254 Ill. 220, 98 N. E. 275, 39 L. R. A. (N. S.) 437. We deem this the most important for our consideration because the Constitution of Illinois, so far as it relates to exemptions of property used for religious purposes, is, as above noted, identical in language with that of this state; because the facts in that case are on all fours with those in the present case; and, further, because that decision cites, in its support, all of the other authorities upon which relators rely. In considering the weight which we think should be given to the decision of the Illinois court, we will review the authorities which are cited in support thereof, the reasons given for decision, the consistency of such reasons when considered in the light of other decisions of the same court, and, finally, the lack of unanimity in the court and the views of the minority.

We find cited the two cases of St. Peter's Church v. Scott County, 12 Minn. 395 (Gil. 280), and Hennepin County v. Grace, 27 Minn. 503, 8 N. W. 761. An examination of the opinions in these two cases discloses that the law under consideration was entirely different in its wording from that now before us. These decisions are of absolutely no authoritative force. There is cited the case of People ex. rel. v. Feitner, 168 N. Y. 494, 61 N. E. 762. In this case the law in question provided that:

"The real property of a corporation or association organized exclusively for * * * religious * * * purposes, and used exclusively for carrying out thereupon * * * such purposes, * * * shall be exempt from taxation. * * *"

While the court held that a rectory separate from a church building was not exempt, it held that the occupancy of a part of another building by an engineer was incidental to the work carried on by the corporation, and that such occupancy did not render such building nonexempt. We do not deem the reasoning of the court in this case at all consistent with that of another court of the same state, found in the two New York cases above referred to. Moreover, the court calls attention to the fact that there is a statute specifically exempting rectories and parsonages to the extent of $2,000 and it well says:

"Here we have an express provision exempting buildings of this character to the extent of $2,000 and no more, thus clearly indicating the legislative intent that such buildings, the value of

which exceeds the sum of $2,000, is assessable for the excess of such value."

The Illinois court cites the case of Ramsey County v. Church of the Good Shepherd, 45 Minn. 229, 47 N. W. 783, 11 L. R. A. 175. While the court in that case considered the entire language of the statute relating to exemption of church property—"all churches, church property used for religious purposes, and houses of worship"—a reading of the decision shows that the court was governed in its decision by the earlier decisions in St. Peter's Church v. Scott County and Hennepin v. Grace, supra, in both of which no reference was made to a part of the statute, . "church property used for religious purposes." The court referring to these earlier decisions says:

"This court has decided in two cases that a rectory or parsonage belonging to a church society is not exempt from taxation. * * * That question is therefore no longer open."

The court then refers to the statute and states:

"The question suggests itself, Do the words, 'church property used for religious purposes,' refer to buildings or to anything but personal property? If they include buildings, the words 'churches' and 'houses of worship' are superfluous."

It is true that the court does go on and place upon the words, "church property used for religious purposes" the construction which it claims they should receive even though they are held to include real estate. But in construing these words the opinion discloses that the controlling thought in the minds of the court was whether or not the parsonage, in and of itself, separate and distinct from the rest of the church property, was used for "religious purposes." The court failed entirely to consider the relation of the parsonage to the other church property and its uses, or to consider the fundamental purpose that brought the parsonage into being. When we read this Minnesota case and then read the decision of the same court in Ramsey Co. v. Macalester College, supra, we are taxed to understand upon what ground that court could say that professors' residences are necessary for the proper occupancy of college grounds, and a parsonage is not a building essential to proper church work, and a building used primarily, with the church for religious purposes. The Illinois court cites St. Joseph's Church v. Assessors of Taxes, 12 R. I. 19, 34 Am. Rep. 597. The Rhode

Island statute exempted property "used exclusively for religious worship." It is clear that the construction placed upon those words can have no authoritative force in determining the construction to be put upon our Constitution. The Illinois court cites Gerke v. Purcell, 25 Ohio St. 229, and Watterson v. Halliday, 77 Ohio St. 150, 82 N. E. 962, 11 Ann. Cas. 1096. The property which the Ohio statute (Rev. St. 1906, § 2732) provides shall be exempt is "houses used exclusively for public worship." It thus disclosed that these decisions are also of no authoritative force in determining the constructions to be put upon our Constitution. The only other case cited by the Illinois court is that of Vail v. Beach, 10 Kan. 214. The Kansas court evidently had before it a law similar in wording to our Constitution. The court in that case entered into no discussion of the fundamental purpose for which the dwelling was erected and used. The decision is exceedingly brief, the court merely stating:

"In this case the property is used as any other dwelling; and the use is not distinguishable from that of the residence of any other Christian pastor or Christian gentleman. It is clear that it is not the purpose of the section refered to, to relieve such property from the burden of taxation."

It will thus be seen that the court considered only the immediate use to which the building was put, and not the fundamental or primary purpose because of which the building was provided and put to such use.

It will thus be seen that little authority is to be found in the cases cited by the Illinois court in support of its decision. What reasons does the court give for its decision? After referring to the strict rule which it holds should control in construing tax exemption laws, it says:

"And in determining whether property falls within the terms of the exemption, whether it be constitutional or statutory, it is the primary use to which the property is put which must be considered, and not its secondary use."

No thought is given to the primary or fundamental purpose lying back of the erection of the building and putting it to this use which the court says was its "primary use." We are led to wonder how that court could reconcile this decision to that in the case of Monticello Seminary v. People, supra, where, as above

noted, under the same constitutional provision, it held the various tracts of land therein described, as well as certain residences, to be property "used exclusively for school purposes." The majority decision does not refer to the Monticello Case.

The Illinois decision was that of four of its seven judges. The other three united in a strong dissent. They did not refrain from referring to the Monticello Case. Speaking of the land mentioned in that case, the writer of the minority opinion says:

"If that land was held and 'used exclusively for the purposes of the institution,' and the facts brought the case, as said by the court, 'within the very words of the exemption from taxation of the Constitution and the legislation upon the subject,' I am unable to see why the facts in this case do not bring it within the exemption of the Constitution and the legislation upon the subject. If land devoted to raising vegetables and fruit for use by the teachers and students, and grain and hay for live stock owned by the institution is, within the meaning of the Constitution, used exclusively for school purposes, it would seem a church parsonage, owned and used as shown by the record in this case, is used exclusively for religious purposes. The Monticello Seminary Case, 249 Ill. 481, 94 N. E. 938, has never been overruled, but has been frequently cited in subsequent cases."

And in further support of the dissent and announcing the reasons upon which it is based, the writer says:

"It does not require a resort to the rule of liberal construction to hold that property acquired, owned, and used as is this property, is used exclusively for religious purposes within the meaning of the Constitution and statute. The exemption authorized by the Constitution is not restricted to propery used exclusively for public worship, but embraces all property exclusively—that is, primarily—used for religious purposes. A church building for public worship is essential to the successful carrying out of the work of the church, and a pastor or priest is also necessary for effecient work. * * * No church, society, or congregation builds a church for other than a religious purpose. A purpose is 'the idea or ideal kept before the mind as an end of effort or action.' The purpose of building churchhouses is to promote the cause of religion, and this requires the services of a pastor or minister. As he is usually a man who devotes all his time to the work of the

church and has no income except such as is paid by his congrega-
tion, it is customary to provide a place for him to live. Some-
times such provision is made a part of or connected with the
church building, and sometimes, as in the case before us, a house
is built on a lot adjoining the church lot. But wherever the
building in which the pastor is to live is located, it is a
part of the plan of the congregation to benefit mankind by
preaching and teaching religion. The idea before the mind
in furnishing the pastor a house is to make efficient the re-
ligious work and purpose of the church. * * * There is nothing
in the Constitution or statute which limits church property that
may be exempted from taxation to that necessarily used for
public worship. The limitation is to property exclusively or pri-
marily provided and used for religious purposes."

The reasoning of the minority in the Monticello Case is con-
vincing. It furnishes a sound rule for the determination of all
questions of tax exemptions under the particular provision of the
Constitution which we have been considering. To hold as con-
tended for by relators would lead to distinctions without reason
for their support. To treat what we might well term a religious
"plant" as an entity, just as the courts uniformly treat educational
"plants," not only conforms to common sense, but treats those
things on a parity which the fundamental law of this state has
clearly intended should be so considered.

The peremptory writ sued for is denied.

GATES, J., not sitting.