[Civ. No. 41965. First Dist., Div. Two. Nov. 3, 1978.]

BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR
UNIVERSITY, Plaintiff and Respondent, v.
COUNTY OF SANTA CLARA, Defendant and Appellant.

**COUNSEL**

Selby Brown, Jr., County Counsel, and Byron D. Athan, Deputy County Counsel, for Defendant and Appellant.

McCutchen, Doyle, Brown & Enersen, Gordon M. Weber and David M. Heilbron for Plaintiff and Respondent.

**OPINION**

**TAYLOR, P. J.**—The County of Santa Clara (County) appeals from a summary judgment after a court trial entered on stipulated facts granting a property tax exemption to Leland Stanford Junior University (Stanford) for the July 1, 1975-June 30, 1976, fiscal year exempting 166 acres of Stanford's land used as a golf course. The County contends that the golf course does not qualify for the exemption from the ad valorem tax as it was not used exclusively for educational purposes within the meaning of article XIII, section 3, subdivision (e), of the state Constitution. For the reasons set forth below, we have concluded that the judgment must be affirmed.

The facts as stipulated by the parties and set forth by the court below in its helpful memorandum opinion are as follows:

Stanford is a nonprofit organization of higher education within the meaning of section 3, subdivision (e), of article XIII of the state Constitution; its principal campus is located near Palo Alto in the County. The Stanford campus includes a golf course of approximately 197 acres, of which 166 acres are within the boundaries of the County.

The golf course is an integral part of Stanford's physical education and recreation programs. It is used for golf class instruction of students and

for intercollegiate and intramural college competition by students. Stanford students, faculty and staff also use the course for recreational golf play.

In addition, Stanford's varsity long distance running team uses the golf course as a cross-country running course. The running team normally has three intercollegiate meets with other universities and the Pacific Eight conference meet is normally held on the Stanford course. Other Stanford students, along with faculty and staff, engage in recreational running on the golf course but, because of the hazard factor, Stanford has been attempting to discourage such use.

The breakdown of course play for fiscal years 1974 and 1975 is detailed below.[1] Approximately 90 percent of the members of the Stanford Golf Club are Stanford alumni; in the past five years, no member has been admitted from the nonalumni waiting list. Recreational golf play use has been extended by Stanford to alumni members of the golf club and their guests, which during fiscal years 1974 and 1975, accounted for 48 percent and 46 percent, respectively, of the total rounds played each year; approximately 5. percent of the rounds were played by public club members.

Intercollegiate golf matches and tournaments are played on the golf course by the Stanford varsity team, the Stanford freshman team and the Golf Team of Menlo College, a two-year collegiate institution located in Menlo Park near Stanford.

In 1974, the Stanford varsity team played 8 intercollegiate golf competitions, the freshmen team played 16 (including 2 with Menlo College) and the Menlo College team played 11 (including the 2 with the Stanford freshmen). In 1975, the Stanford varsity team played six intercollegiate golf competitions, the freshmen team played six (including one with Menlo College) and the Menlo College team played eleven

| [1] | 1973-1974 | | 1974-1975 | |
|---|---|---|---|---|
| | Rounds | Percent | Rounds | Percent |
| STUDENTS | 8,263 | 15.90 | 9,465 | 16.83 |
| FACULTY | 8,728 | 16.79 | 8,796 | 15.64 |
| EMPLOYEES | 3,495 | 6.72 | 2,235 | 3.97 |
| CLUB MEMBERS | 23,248 | 44.72 | 20,426 | 36.31 |
| GUEST | 8,247 | 15.87 | 15,325 | 27.25 |
| STUDENTS ....................26% | | | | |
| FACULTY AND OTHERS ..........19% | | | | |
| CLUB MEMBERS ......................55% | | | | |
| TOTAL | 51,981 | 100.00 | 56,247 | 100.00 |

(including the one with the Stanford freshmen). The annual exemption for the golf course had been granted up until the fiscal year 1975-1976. No evidence was presented concerning the frequency of use in terms of rounds of play by students, faculty and staff and nonstudents for the fiscal year 1975-1976.

The pertinent provision of the state Constitution exempts from property taxation "land . . . used exclusively for educational purposes by a nonprofit institution of higher education." (Art. XIII, § 3, subd. (e).) ▋ As we recently reiterated in *English* v. *County of Alameda*, 70 Cal.App.3d 226, at page 234 [138 Cal.Rptr. 634]: "The rules concerning the interpretation of tax exemption enactments emphasize that constitutional provisions and statutes granting exemption from taxation as a general rule are strictly construed to the end that such concession will neither be enlarged nor extended beyond the plain meaning of the language employed. However, the rule of strict construction does not require that the narrowest possible meaning be given to the exempting language, for a fair and reasonable interpretation must be made of all laws with due regard for the ordinary acceptance of the language employed and the object sought to be accomplished. To put it tersely: *strict construction must still be a reasonable construction* (*Cedars of Lebanon Hosp.* v. *County of L. A.* (1950) 35 Cal.2d 729, 734-735 [221 P.2d 31, 15 A.L.R.2d 1045]; *Y. M. C. A.* v. *County of L. A.* (1950) 35 Cal.2d 760, 767 [221 P.2d 47]; *Fredericka Home* v. *County of San Diego* (1950) 35 Cal.2d 789, 792 [221 P.2d 68]; *Church Divinity Sch.* v. *County of Alameda* (1957) 152 Cal.App.2d 496, 502 [314 P.2d 209])."

▋ In the first case to construe the above quoted phrase "used exclusively for educational purposes," *Church Divinity Sch.* v. *County of Alameda, supra,* 152 Cal.App.2d 496, we held that certain college properties (family residences occupied rent free by faculty members, apartment houses occupied by married students, student parking lot) were exempt from ad valorem property taxation. In so holding, we cited the welfare exemption cases (*Cedars of Lebanon Hosp.* v. *County of L. A., Fredericka Home* v. *County of San Diego, Y. M. C. A.* v. *County of L. A.,* all *supra*), and by compelling analogy concluded that the property " 'used exclusively for . . . purposes of education' includes *any facilities which are reasonably necessary for the fulfillment of a generally recognized function of a complete modern college.*" (152 Cal.App.2d at p. 502; italics added.)

The parties here stipulated that the golf course is an integral part of Stanford's physical education and recreation program. The County urges

that the golf course must be "essential," as well as reasonably necessary. However, a test of absolute indispensability was expressly rejected by our Supreme Court in *Cedars of Lebanon Hosp.* v. *County of L. A., supra,* 35 Cal.2d 729, in holding that hospital tennis courts were within the welfare exemption. The present test permits each educational institution to determine what facilities are reasonably necessary for the fulfillment of its unique mission and primary purpose for which it was organized. ■ The underlying premise of the educational tax exemption is essentially one of academic freedom, as educational institutions should be free from direct governmental control to enable them to fulfill their role as independent critics of government action (Note, *Alternatives to the University Property Tax Exemption* (1973) 83 Yale L.J. 181, at p. 184). ■ Thus, contrary to the County's contention, the nature of the particular facility is not determinative. As we indicated in *English* v. *County of Alameda, supra,* 70 Cal.App.3d 226, the test is the use of the property. Exemption has been denied where the property is used primarily as a revenue generating device (*Honeywell Information Systems, Inc.* v. *County of Sonoma,* 44 Cal.App.3d 23 [118 Cal.Rptr. 422] (computer systems); *Cedars of Lebanon Hosp.* v. *County of L. A., supra,* 35 Cal.2d, p. 745 (thrift shop)).

■ The term "educational" is a comprehensive one embracing mental, moral and physical education (*Application of Syracuse University,* 59 Misc.2d 684 [300 N.Y.S.2d 129, 136]). Accordingly, property used for recreational, athletic or social purposes[2] has long been held to be reasonably necessary for the fulfillment of the function of a modern institution of higher learning in this state (*San Francisco Boys' Club, Inc.* v. *County of Mendocino,* 254 Cal.App.2d 548, 552 [62 Cal.Rptr. 294] (1,937.98 acres used for 10 weeks of camping by 200 boys) and many others; *Application of Syracuse University, supra* (tennis courts); *The Harvey School* v. *Town of Bedford,* 34 App.Div.2d 965 [312 N.Y.S.2d 586, 587] (ice skating rink and related facilities used by students and their parents, alumni and their parents); *People* ex rel. *Pearsall* v. *Catholic Bishop of Chicago,* 311 Ill. 11 [142 N.E. 520] (lake); *Wheaton College* v. *Town of Norton,* 232 Mass. 141 [122 N.E. 280] (wild woodland used by students for recreational purposes); *City of Chicago* v. *University of Chicago,* 228 Ill. 605 [81 N.E. 1138, 1139] (clubhouse used by students and alumni)).

---

[2]Compare the similar approach used in the welfare exemption cases, such as *St. Francis Hosp.* v. *City & County of S. F.,* 137 Cal.App.2d 321, 328 [290 P.2d 275] (coffee shop for the convenience of resident personnel and visitors), and *Cedars of Lebanon Hosp.* v. *County of L. A., supra,* 35 Cal.2d, page 734.

The County also asserts that the less than 50 percent use of the golf course by Stanford destroys its exclusiveness. We rejected a similar argument in *Church Divinity Sch.* v. *County of Alameda, supra,* 152 Cal.App.2d at pages 504-507. Contrary to the County's assertion, the percentage of use by outsiders is not determinative (*Pasadena etc. Assn.* v. *County of L. A.,* 69 Cal.App.2d 611, 615 [159 P.2d 679]). Here, 90 percent of the "outside uses" were Stanford alumni. The special relationship of a university to its alumni has been recognized. In *City of Chicago* v. *University of Chicago, supra,* 81 N.E. 1138, a clubhouse used exclusively by students and alumni for recreation and social purposes was held to be a use in the immediate carrying on of the educational purpose of the university.

As stated in the well written memorandum opinion of the court below: "One may readily conjecture any number of activities historically identified within the realm of traditional educational purposes of institutions of higher learning that, while not indispensable, have long been accepted as reasonably necessary and incidental to enhancement of legitimate educational purposes in today's university setting. Clearly, as conceded herein, the use of university property as an integral part of the educational and recreational scheme constitutes a use exclusively committed to the overall educational function. Nor can it be reasonably argued that any disqualifying incompatibility results from the limited physical use of educational resources through alumni participation generally. Viewed in a proper perspective, the modern institution of higher learning does indeed relate in a unique and desirable way with its alumni and the general public in fostering the principal purposes of its charter. Such incidental, nonstudent but university-related use should not, without more, totally disqualify an otherwise validly-recognized exempt educational use. Unlike certain of the cases relied upon by County, the incidental use is not undertaken as a means of generating revenue; nor does it involve totally separate and independent activities bearing no reasonable relationship to the primary educational function. Such limited use neither detracts nor departs from the exclusive commitment of the property for legitimate educational purposes. The property continues to be used, compatible with the incidental use, as an important component of Stanford's educational and recreational programs."

Like the court below, we can only conclude that the limited and incidental use of the golf course by alumni and public members is fully consistent with the overall educational purposes and activities of Stanford, and does not impair the exempt status of the property.

We hold that the golf course was used exclusively for educational purposes within the meaning of the constitutional provision and, therefore, entitled to the tax exemption.

The judgment appealed from is affirmed.

Kane, J., and Rouse, J., concurred.