**NORTH DAKOTA SOCIETY FOR CRIP-PLED CHILDREN AND ADULTS, a North Dakota corporation, Plaintiff and Appellant,**

**v.**

**Louise MURPHY, as County Treasurer of Stutsman County, North Dakota, Defendant and Respondent.**

**No. 7794.**

Supreme Court of North Dakota.

Jan. 12, 1959.

Hjellum, Weiss, Nerison & Ottmar, Jamestown, for appellant.

M. C. Fredricks, State's Atty. of Stutsman County, Jamestown, for defendant and respondent.

Hendry K. Mackenzie, Jamestown, amicus curiae.

MORRIS, Judge.

In this action the plaintiff seeks to recover from the defendant the sum of $483.-08 representing taxes on real property levied by Stutsman County for the years 1954 and 1955 which the plaintiff paid under protest on November 27, 1956. Subsequent to the payment the plaintiff ap-

plied to the Board of County Commissioners of Stutsman County for a refund of the amount so paid. The application for refund was rejected. The real property is known as Lot 8 of Hi-Acres Second Addition to the City of Jamestown, Stutsman County, North Dakota. This lot was during the period in controversy and still is owned by the plaintiff. During all of that time there was and is a house thereon occupied exclusively as a residence by an employee of the plaintiff known as its "executive director" who pays no rent and receives a cash salary of $7,000 per year.

The plaintiff is a nonprofit corporation organized for charitable purposes. Its income of about $80,000 per year is devoted to work in the field of physically handicapped children and adults. The general program and the limits within which the organization functions are determined by the executive committee of the board of directors which employs an executive director whose principal duties are administration, fund raising and the drafting of the overall program under which the society operates. It maintains a state headquarters with five permanent employees under the administration of the executive director. This headquarters has no physical connection with the residence in question and is located in a different part of the city.

The plaintiff contends that the residence in question is exempt from taxation because the plaintiff is an institution of public charity and the property is "used wholly or in part for public charity" and thus comes within the exemption provided by Section 57-0208, paragraph 8, NDRC 1943, which reads:

"All buildings and contents thereof belonging to institutions of public charity, including public hospitals under the control of religious or charitable institutions, used wholly or in part for public charity, together with the land actually occupied by such insti-

tutions not leased or otherwise used with a view to profit, and all moneys and credits appropriated solely to sustaining and belonging exclusively to such institutions;".

The defendant does not question plaintiff's assertion that it is an institution of public charity but contends that the use to which the property is put determines its taxability and that the use of the property as a residence for the executive director does not bring it within the exemption. No constitutional questions are presented. The issues involve only the construction and application of the statute.

The trial court decided that the plaintiff was a charitable institution but that the use to which the property was put did not justify its exemption from taxation under the statute and rendered judgment for the dismissal of plaintiff's action. The plaintiff has appealed from that judgment. The case is here for trial de novo.

The plaintiff was incorporated in 1947 and up to the present time has employed two successive executive directors both of whom have lived in residences furnished by the plaintiff. It is difficult to secure a competent director because few persons have experience in that field. It was difficult to find suitable housing in Jamestown and the plaintiff undertook to supply a residence as an inducement to competent persons to accept the position of director. At first the plaintiff rented a house for its director at $80 per month. When the rent was raised to $100 per month a committee was appointed to select and recommend the purchase of a residence, with the result that the property in controversy was purchased in 1954.

The plaintiff contends that the decision to purchase did not stem wholly from the raise in rent but that the executive committee considered that the ownership of a residence was a necessity in order to insure proper housing to applicants for the position of executive director and that therefore the ownership of a residence

contributes directly to the advancement of the charitable purposes of the organization in making it more easy to secure a competent director and to that extent at least the residence is "used wholly or in part for public charity". While the argument is resourceful it cannot prevail. We have here but a single use. The property is used as a residence and for no other purpose. The use of the residence by the director is as much a remuneration for his services as is the cash salary that he receives and whether the residence in which he lives is owned by the society or rented by it would seem to have little bearing on whether he should accept or retain the position as director. The fact asserted by the plaintiff that ownership rather than the rental of a house would render the inducement which it could offer more stable since an owned residence would always be available regardless of housing shortages has at the most a very remote bearing on the charitable activities of the plaintiff.

 As we approach the construction of our statute and its application to the facts of this case we bear in mind the rules that the burden is on the claimant of a tax exemption to establish the exempt status of his property and that the laws under which such an exemption is claimed will receive a strict construction against the claimant. Engstad v. Grand Forks County, 10 N.D. 54, 84 N.W. 577; In re McKee's Estate, 71 N.D. 545, 3 N.W.2d 797; Incorporated Trustees of Gospel Worker Society v. Evatt, 140 Ohio St. 185, 42 N.E.2d 900; City of Longview v. Markham-McRee Memorial Hospital, 137 Tex. 178, 152 S.W. 2d 1112; Trinity Methodist Episcopal Church v. City of San Antonio, Tex.Civ. App., 201 S.W. 669; Cypress Lawn Cemetery Ass'n v. City and County of San Francisco, 211 Cal. 387, 295 P. 813; Walker v. State, 154 Cal.App.2d 838, 316 P.2d 998; People ex rel. Kelly v. Avery Coonley School, 12 Ill.2d 113, 145 N.E.2d 80; American Bridge Co. v. Smith, 352 Mo. 616, 179 S.W.2d 12, 157 A.L.R. 798 and Annotations.

In Boston Symphony Orchestra, Inc. v. Board of Assessors, 294 Mass. 248, 1 N.E. 2d 6, 10, it was held that doubt as to whether property is used for charitable or benevolent purposes so as to exempt it from taxation must be resolved against the claimant and:

> "Any doubt must operate against the one claiming tax exemption, because the burden of proof is upon the one claiming an exemption from taxation to show clearly and unequivocally that he comes within the terms of the exemption."

The plaintiff cites Cedars of Lebanon Hospital v. Los Angeles County, 35 Cal. 2d 729, 221 P.2d 31, 35, 15 A.L.R.2d 1045 which included actions by five other hospitals. Several properties were claimed to be exempt as "property used exclusively for * * * hospital * * * purposes." In the opinion it is stated:

> "The first question presented is whether the use of property by plaintiff hospitals for a nurses' training school and to provide housing for hospital interns, resident doctors, student nurses, and certain other alleged essential employees required to be readily available in their effective operation constitutes a use exclusively for hospital purposes and so brings the property within the scope of the welfare tax exemption."

In sustaining the claims for exemption the court emphasizes the necessity of the ready availability of the personnel so housed in connection with the work of the hospitals. We infer from the opinion that these facilities were maintained in immediate connection with or in close proximity to the hospitals. The services performed for the plaintiff by its executive director bear little similarity to the services performed for a hospital by its nurses, interns and resident doctors. More similarity to the work of the director exists with respect to services performed for an educational institution by its administrators and instructors.

In Knox College v. Board of Review, 308 Ill. 160, 139 N.E. 56, 57, 35 A.L.R. 1041, the court considered the application of an exemption from taxation of property used exclusively for school purposes. One of the properties under consideration was the residence of the president of the college. The court said:

"The home of the president of Knox College in this case was 11 blocks from the college campus and was not so closely connected with the work of the main institution as to distinguish it from any other home, although it may be true that the fact of the building being owned by the college and furnished to the president as a home and as a part of his compensation distinguishes it in that respect from other residences. These facts would apply with equal force to the residence of a minister of a church. It was argued in People [ex rel. Thompson] v. First Congregational Church, 232 Ill. 158, 83 N.E. 536, that the duties of the minister so peculiarly related his home to religious purposes as to render it exempt, but it was held that the home was for residence purposes the same as any other home, and was therefore not exempt. So far as the record shows here, the president's house is primarily a home, without any condition for educational purposes or work being required to be performed there."

The more recent case of People ex rel. Kelly v. Avery Coonley School, 12 Ill.2d 113, 145 N.E.2d 80, 82, involved the exemption of a building on a tract that afforded the only means of ingress and egress to the principal school building. The land was held exempt and the building not exempt. It is a two-story common brick building containing two small apartments with a garage attached. The first floor apartment is occupied as a residence by the headmistress of the school who also used the garage. The second floor apartment is occupied as a residence by the principal custodian of the school buildings and grounds. The use of the apartments is a part of the compensation of the headmistress and the custodian. Neither of them pays rent. In an attempt to sustain the exemption, apparently on the ground of special benefit to the institution, it was pointed out that the residence there of the headmistress permits her to be available for conferences before and after school hours and on Saturdays, Sundays and holidays. With respect to the custodian it was claimed that because he lives on the school grounds it is unnecessary to employ a watchman. After citing a number of cases the court said:

"In these cases, and in many others the primary use of the property, and not its incidental uses, has fixed its status for taxing purposes. Here, as in the cases cited, the residential use is primary; other uses are incidental."

It was held that the building was not property used exclusively for school purposes and therefore was not exempt.

In President, etc. of Williams College v. Assessors of Williamstown, 167 Mass. 505, 46 N.E. 394, 395, the court considered a statute exempting from taxation the real estate of a college when occupied by it or by its officers for the purposes for which it was incorporated as applied to lots with dwelling houses on them owned by the college in the vicinity of the institution. They were occupied by the superintendent of college buildings, the librarian, the registrar, the director of the gymnasium and by professors in the college. The residences were occupied under a parole agreement whereby each occupant received a stated salary per month and the use of the residence while in the service of the college but the value of the occupation of each residence was determined and deducted from the monthly salary of the occupant. In holding that the residences were not occupied by the college or by its officers for the purposes for which it was incorporated the court said:

"In the present case the occupants were each in the sole occupation of the premises, and occupation was for strictly private purposes, and the control of the premises while they occupied was with them. That the rent was paid by a deduction made by the college monthly from the salary, instead of being paid directly to the college, is immaterial. It has been held many times that, to exempt the real estate of a corporation under the statutes we are considering, it is not enough that the income is applied to the purposes of the corporation, but the real estate itself must be occupied for those purposes. It is not enough that the corporation derives a benefit from the occupation of the real estate, but the real estate must be occupied by the corporation or its officers for the purpose of carrying into effect the purposes of the corporation."

The plaintiff cites Scottish Rite Temple Association v. Board of Com'rs of Yankton County, 62 S.D. 204, 252 N.W. 626, as being most in point. The opinion in that case follows the decision in State ex rel. Eveland v. Erickson, 44 S.D. 63, 182 N.W. 315, 13 A.L.R. 1189. In the A.L.R. Annotation following that case it is indicated as being representative of a minority rule. See 13 A.L.R. p. 1203.

In the case involving the Scottish Rite Temple Association the court construed and applied a statute exempting "all property belonging to any charitable, benevolent or religious society and used exclusively for charitable, benevolent or religious purposes." [Laws 1929, c. 243.] The court upheld the exemption of a dwelling house erected for and used exclusively as the place of residence for the secretary of the Consistory. The house was on property adjoining other property of the Consistory and was furnished as a residence for the secretary as a part of his salary. The court followed State ex rel. Eveland v. Erickson, supra, saying:

"In other words, under the Eveland Case it is not the mere use of the property that controls, but the 'purpose of the use.' Thus, 'the purpose of the use' of this property, so far as the owner is concerned, is not to shelter its secretary, but to promote the primary objects of the organization, which are stipulated to be benevolent and charitable."

Our statute does not use the term "purposes" but requires that the exempt property be "used wholly or in part for public charity."

The wording of our exemption does not lend itself to the construction placed upon the South Dakota statute. We hold that the use contemplated by our statute is one that results in a benefit that has at least some direct and primary connection with the public charitable activities of the institution. A monetary saving or a mere convenience is not such a benefit. In this case the property is exclusively residential. Its location with respect to the plaintiff's charitable activities is remote. While there may be an economical advantage and an administrative convenience in ownership, the connection between that ownership and the charitable activities of the plaintiff is nebulous and not of sufficient substance to support the claim of exemption. The judgment appealed from is affirmed.

SATHRE, C. J., and BURKE, J., concur.