YOUNG MEN'S CHRISTIAN ASSOCIA-TION OF NORTH DAKOTA STATE UNI-VERSITY, a Nonprofit Corporation, Plain-tiff and Appellant,

v.

BOARD OF COUNTY COMMISSIONERS, CASS COUNTY, North Dakota, et al., Defendants and Respondents.

YOUNG MEN'S CHRISTIAN ASSOCIA-TION OF NORTH DAKOTA STATE UNI-VERSITY, a Nonprofit Corporation, Plain-tiff and Appellant,

v.

BOARD OF COUNTY COMMISSIONERS, CASS COUNTY, North Dakota, and By-ron L. Dorgan, North Dakota State Tax Commissioner, Defendants and Respond-ents.

Civ. Nos. 8800, 8801.

Supreme Court of North Dakota.

May 31, 1972.

Wattam, Vogel, Vogel & Peterson, Fargo, for plaintiff and appellant.

John O. Garaas, Cass County State's Atty., Solberg, Anderson & Stewart, Fargo, and Helgi Johanneson, Atty., Gen., Bismarck, for defendants and respondents.

STRUTZ, Chief Justice, on reassignment.

The plaintiff appeals from a judgment of the district court of Cass County denying, in the first case, its prayer for a declaration of tax exemption of property upon which two apartment buildings are located, and affirming, in the second case, the decision of the Board of County Commissioners denying plaintiff's application for tax abatement and for refund of taxes paid under protest. The two cases were consolidated for trial and concern the same property. There appears to be no great dispute as to the facts, which, briefly stated, are as follows:

—The plaintiff was organized as a nonprofit corporation in 1915 for the purpose of promoting the moral, social, and religious welfare of the students at North Dakota State University. During the period since its incorporation, it has promoted the social, moral, and spiritual development of students at the University and has conducted programs which included Bible study and religious conferences. In more recent years, it has provided personal counseling and an atmosphere for discussions on ethics and religion.

—Prior to June 1957, the affairs of the plaintiff were conducted and managed from offices in a building owned by the YMCA on the corner of 13th Street and 12th Avenue, North, in Fargo, which location was just off the University campus. In June of that year, a tornado struck the area and completely destroyed this building. The insurance money received by the plaintiff for the loss of the building was invested, and the plaintiff's business thereafter was conducted from temporary quarters in various buildings on the University campus.

—In 1965, the directors of the plaintiff decided that the insurance money which had been received for the destruction of its building should be used in some way to serve the University community. After due consideration, it was determined that a dormitory for the housing of foreign, graduate, and married students was needed. A plan to erect two seventeen-unit apartment buildings to provide such housing thereupon was adopted. This was in conformity with the plaintiff's policy of promoting moral and social welfare of students and of the general policies of the YMCA.

—The insurance money was used as a down-payment for the construction of the apartment buildings, which were completed and ready for occupancy by June of 1968. Each fall since their completion, fifty per cent of the apartment units have been reserved for occupancy by foreign students, although that quota seldom, if ever, has been taken by such persons. The remaining units are made available to American students and to lower-echelon instructors whose stay in the apartments is limited to one year for American faculty members and two years for foreign faculty personnel. All tenants of the buildings are required to become members of the University YMCA and are encouraged but not required to become active in its charitable and religious programs.

—The apartments are rented at their fair market value and are, in fact, in competition with similar privately owned apartments. The income from the apartments has exceeded the cost of maintenance by a substantial amount each year, and such excess funds have been used for the general charitable purposes of the plaintiff. The record further brings to light the fact that the estimated useful life of these buildings is fifty years, and that in determining profits no allowance was made for depreciation. Furthermore, no deduction was made for expenses of management of the apartments, since this work was done by the executive director of the YMCA without allocating any portion of his salary or expense for such management.

On this record, the trial court found that the apartment buildings in controversy were not exempt from property taxes under our law. The sole question for us to determine on these appeals is whether the apartment buildings owned by the plaintiff, and rented under circumstances shown by the record, are exempt from taxation.

Section 176 of the North Dakota Constitution provides that property used for charitable purposes shall be exempt from taxation. It reads, in part:

". . . property used exclusively for schools, religious, cemetery, charitable or other public purposes shall be exempt from taxation."

This constitutional provision has been implemented by legislation. Among the laws enacted for exempting property from taxation we find the following:

"8. All buildings and contents thereof belonging to institutions of public charity, including public hospitals under the control of religious or charitable institutions, used wholly or in part for public charity, together with the land actually occupied by such institutions not leased or otherwise used with a view to profit, and all moneys and credits appropriated solely to sustaining and belonging exclusively to such institutions; . . . " Sec. 57–02–08, N.D.C.C.

The burden is upon the plaintiff to establish that certain of its property comes within the tax-exemption statutes of the State. If there is any doubt as to whether the Legislature intended facilities such as those in question to be exempted from taxation, there is a presumption in favor of the taxing power. State v. Bankhead Mining Co., 279 Ala. 566, 188 So.2d 527 (1966); The Children's Hospital Medical Center v. Board of Assessors of Boston, 353 Mass. 35, 227 N.E.2d 908 (1967); WHYY, Inc. v. Borough of Glassboro, 50 N.J. 6, 231 A.2d 608 (1967); Methodist Old Peoples Home v. Korzen, 39 Ill.2d 149, 233 N.E.2d 537 (1968); State of Minnesota v. Northwestern Preparatory School, 249 Minn. 552, 83 N.W.2d 242 (1957).

The mere fact that the services performed by a charitable corporation also are rendered by profit-making organizations would not of itself preclude plaintiff's right to tax exemption. Hospital Purchasing Service of Michigan v. City of Hastings, 11 Mich.App. 500, 161 N.W.2d 759 (1968). It is the use made of the property, rather than its ownership, which determines whether the property is exempt from taxation. Mountain View Homes, Inc. v. State Tax Commission, 77 N.M. 649, 427 P.2d 13 (1967); Community Memorial Hospital v. City of Moberly, 422 S.W.2d 290 (Mo.1968); South Iowa Methodist Homes, Inc. v. Board of Review of the City of Des Moines, 173 N.W.2d 526 (Iowa 1970).

Ownership of the property in question by an institution of public charity such as the YMCA does not, ipso facto, exempt the property from taxation. The property itself must be devoted to charitable purposes and it must actually be used in carrying out the charitable purposes of the one claiming the exemption. International College of Surgeons v. Brenza, 8 Ill.2d 141, 133 N.E.2d 269 (1956).

Each case where a claim for tax exemption is made is a separate cause of action and must be decided upon its own facts. Paraclete Manor of Kansas City v. State Tax Commission, 447 S.W.2d 311 (Mo.1969); MacMurray College v. Wright, 38 Ill.2d 272, 230 N.E.2d 846 (1967).

This court has held that the provisions exempting property from taxation in North Dakota are to be strictly construed; that the operation of the exemption provisions should not be extended by construction beyond what the Legislative Assembly intended them to cover; that the powers of the State to tax are presumed; and that

the exemption therefore must be clearly granted. Lutheran Campus Council v. Board of County Commissioners, Ward County, 174 N.W.2d 362 (N.D.1970). See also 51 Am.Jur. Taxation, Sec. 639, p. 609.

Holding that the exemption must be clearly granted does not mean that a liberal construction should not be given to the exemption statute in order to carry out the express intention of the framers of the Constitution and the members of the Legislative Assembly. It means, instead, that the property claimed to be exempt must clearly fall within the provisions of the exemption statute.

■ This court also has held that in order to justify the exemption of property from taxation under the provisions of Section 57–02–08(8), North Dakota Century Code, as being used wholly or in part for public charity, its use must result in a benefit that has at least some direct and primary connection with the public charitable activities of the institution. North Dakota Society for Crippled Children and Adults v. Murphy, 94 N.W.2d 343 (N.D.1959).

A review of decisions of other jurisdictions discloses that courts in other parts of the country have not been consistent in granting exemption from taxation to YMCA's. Depending upon the facts of the individual case and the wording of the tax exemption in the particular jurisdiction, we find that tax exemptions have been granted to YMCA property which was being used for athletics, barbershops, billiard rooms, candy counters, committee rooms, dormitories, hotels, restaurants, soda fountains, summer camps, tennis courts, and the like. On the other hand, some jurisdictions have denied tax-exempt status under their particular statutes for property used by YMCA's for barbershops, dormitories, restaurants, summer camps, etc. 84 C.J.S. Taxation, § 303, p. 628; 51 Am.Jur. Taxation, Secs. 639–642, pp. 609–611. No case was found where the facts were similar to those in the case at bar and where the statutes or constitutional provision granting tax exemptions were similar to those which we must apply in this case. In any event, we are compelled to consider the facts in the case before us in the light of our own constitutional provision and statutes.

In North Dakota Society for Crippled Children and Adults v. Murphy, *supra*, this court distinguished the language of the North Dakota statute from that of a South Dakota law which permitted the South Dakota court to inquire into "purpose of the use" of the property. In *Murphy*, we said:

"Our statute does not use the term 'purposes' but requires that the exempt property be 'used wholly or in part for public charity.'"

We then proceeded to point out that the wording of our exemption statute does not lend itself to the construction placed upon the South Dakota statute, and said:

"We hold that the use contemplated by our statute is one that results in a benefit that has at least some direct and primary connection with the public charitable activities of the institution." *Murphy, supra,* at 347.

In the light of the above construction placed upon our statute by this court, the question for us to determine in this case is whether the apartments, which are rented primarily to graduate students, foreign students, and faculty members, have a direct and primary connection with the public charitable activities of the YMCA of North Dakota State University.

The record in this case shows that a two-bedroom unfurnished apartment rents for $135 a month. If furnished, the required rental is $155. As is already pointed out in this opinion, these rentals produce income which has resulted in a substantial surplus over expenses. For example, the 1969 income from these apartments was more than $10,000 in excess of the expenses for that particular year.

However, the plaintiff asserts that this does not prove that the apartments were leased "with a view to profit" so as to re-

sult in the denial of a tax exemption provided for under the law. This is true, argues the plaintiff, because the so-called profit was realized only by failing to consider depreciation on the buildings and by not charging the income from the apartments for any portion of the executive director's salary for managing the apartments. Plaintiff strenuously urges that the purpose of building the apartments was not to make a profit but to provide housing for foreign and graduate students; that in spite of a long waiting list, a certain number of the apartments are held available for foreign students; and that in some instances rents have been reduced or payment has been delayed because of the adverse financial situation of the student tenants. Plaintiff further points out that no increase in rents has been imposed for more than 3½ years, and that if the apartments were being maintained for profit several increases would have been put into effect in that period of time. Finally, plaintiff asserts that the excess of the rents over expenses always is used to support the charitable activities of the plaintiff.

There are decisions which deny tax exemption to YMCA dormitories. Young Men's Christian Association of Germantown v. City of Philadelphia, 323 Pa. 401, 187 A. 204 (1936). Tax exemption was denied in the above case even though the evidence showed that the YMCA rented its rooms at less than cost. However, the general rule appears to be that YMCA dormitories are allowed exemption where it is shown that they are reasonably necessary to further the general charitable purposes of the organization. 84 C.J.S. Taxation § 303, p. 628, n. 14.

In those cases where tax exemption is granted, however, we find circumstances which are wholly different from the case now before us. In the case of Appeal of Young Men's Christian Association of Pittsburgh, 383 Pa. 176, 117 A.2d 743 (1955), in which the claim for exemption for YMCA dormitories was challenged on the ground that they competed with commercial lodgings, the court pointed out that in that case there were many facts and circumstances which indicated that the YMCA dormitories were not being maintained and operated on a commercial basis for profit. The rooms were small, averaging 9 by 10½ feet. They contained a minimum of furniture: a table, a bed, and a chair. The rooms had no baths or running water, and only one washroom was provided on each floor for all the occupants of that floor. The court pointed out that facilities of that kind obviously were not designed to compete with commercial lodging establishments. Furthermore, the record in that case disclosed that the dormitories were rented at a figure not intended to show a profit; that they actually were operated at an annual loss, even though allowance for depreciation had not been considered; and that the policy of giving preference in renting these units to young men from low-income homes was inconsistent with a commercial enterprise's method of doing business.

The situation in the case before us is wholly different. The two seventeen-room apartment buildings are brick-faced and of good construction. The apartments are carpeted and furnished with air conditioners. Washers and dryers are available for the use of all tenants, and cooking facilities and refrigerators are furnished in each apartment.

■ The mere fact that the apartments are owned by the plaintiff, a nonprofit corporation, is not sufficient to make them tax-exempt under our law. There is no evidence that the cost to the tenants is below ordinary rent charged by commercial enterprises for similar services furnished. In fact, the record shows that the property produced an income sufficient for the plaintiff to realize a profit each year. The apartments compete with commercial housing facilities. Although the tenants are required to join the YMCA, there is no requirement that they must take part in its programs; and although it is clear that the

plaintiff is engaged in worthy charitable programs, the ownership and use of the apartments in question are not for charitable purposes but are for revenue. All property owned by the plaintiff is not exempt from taxation merely because the plaintiff is organized for benevolent purposes. It is only the property which is owned and used by the plaintiff in carrying out its benevolent purposes that is exempt under our law. From the facts disclosed by the record, the apartment houses are not devoted to charitable purposes and are not used in carrying out the charitable purposes of the University YMCA. We agree with the district judge, who found that the property was used with a view to profit and therefore is not exempt under Section 57–02–08(8), North Dakota Century Code. Property which is not used directly for the charitable and benevolent purposes of the plaintiff, but is used for profit, is not exempt from taxation even though the profit derived from such property is, in fact, used to support the plaintiff's charitable programs. Maryland State Fair & Agricultural Society, Inc. v. Supervisor of Assessments, 225 Md. 574, 172 A. 2d 132 (1961).

There is a distinction between the use of the property and the use of the income from the property. Doane College v. County of Saline, 173 Neb. 8, 112 N.W.2d 248 (1961). If we should hold otherwise, any charitable or religious organization could go into any business it saw fit and claim tax exemption so long as it used the income from such enterprises for charitable purposes. That clearly is not what the Legislative Assembly intended.

For reasons set forth in this opinion, we find that the apartment buildings in question are not operated as a means of carrying out the charitable purposes of the plaintiff corporation, and that they do not come within the tax-exemption provisions of the North Dakota Constitution and statutes.

The judgment of the district court is affirmed.

TEIGEN, PAULSON and KNUDSON, JJ., and W. C. LYNCH, District Judge, concur.

ERICKSTAD, J., deeming himself disqualified, did not participate; W. C. LYNCH, Judge of the Fourth Judicial District, sitting in his stead.