Stanley L. HART, III,
Applicant–Appellant,

v.

STATE of Iowa, Respondent–Appellee.

No. 88–1387.

Court of Appeals of Iowa.

Oct. 5, 1989.

Alfredo Parrish and Max Exline of Parrish & Kruidenier, Des Moines, for applicant-appellant.

Thomas J. Miller, Atty. Gen., Christie J. Scase, Asst. Atty. Gen., and Gordon M. Liles, Asst. County Atty., for respondent-appellee.

Heard by HAYDEN, P.J., and SACKETT and HABHAB, JJ.

SACKETT, Judge.

In this postconviction relief proceeding, applicant-appellant Stanley L. Hart contends he received ineffective assistance of trial counsel following his conviction of aiding and abetting in the first degree murder of his Aunt Marilyn.

Hart filed a direct appeal that was dismissed under Iowa R.App.P. 104. His appellate attorney, however, determined the record was not sufficient to address the issue of effective assistance of counsel and asked that this issue be reserved for subsequent proceedings. Hart then filed this petition for postconviction relief, challenging the effectiveness of his trial counsel. The district court failed to grant him postconviction relief and this appeal follows. We affirm.

This case presents a tragic scenario. Hart, at the age of seventeen, manifested a desire to kill his Aunt Marilyn. Marilyn was caring for Hart's grandmother. Hart apparently was convinced his aunt was treating his grandmother badly. Hart was intent on killing his aunt because he felt by doing so he would gain control of his grandmother's money. The State presents substantial and uncontroverted evidence of scheming by Hart to effectuate the murder and dispose of his aunt's body, and of several aborted attempts by Hart to have his aunt killed.

On March 13, 1984, Hart's aunt died as a result of multiple stab wounds. A juvenile named John Allen confessed to the murder. There was testimony Hart offered Allen $3,000 and a car to commit the crime. On the day of the murder, Hart and a friend gave Allen whiskey until he was drunk. They then drove him to Marilyn's house,

gave him a knife, and dropped him off at her driveway, telling him to kill her. Both Allen and the accompanying friend implicated Hart in the plot.

At trial, Hart presented a diminished capacity defense to the jury through the testimony of two psychiatrists, Thomas Hansen and R. Paul Penningroth. Hansen testified that on March 13, 1984, Hart was sane and suffered from no major mental disorder. Hansen did, however, diagnose Hart as having an adjustment disorder with disturbance of conduct. The behavior traits exhibited by Hart which led Dr. Hansen to this diagnosis included: immaturity, naivete, instability, and an inability to take responsibility for his own actions. It was Dr. Hansen's opinion that although Hart was capable of willful action and had the intellectual ability to premeditate murder, his turmoil, immaturity, and fantasy world prevented him from fully appreciating the consequences of his actions.

Dr. Penningroth's testimony was consistent with Dr. Hansen's in most respects. He had arrived at the same diagnosis of Hart, after meeting with him twenty-four or twenty-five times during Hart's three-week stay at St. Luke's Hospital in Cedar Rapids. Penningroth agreed that Hart's adjustment disorder "diminish[ed] his ability to premeditate," because "he wasn't able fully to think through the consequences [of] his actions." Penningroth did concede, on cross-examination, he believed Hart had willfully formed the specific intent to kill his aunt on March 24, 1984.

Hart asserts ineffective assistance of counsel, arguing the district court applied too strict a standard of prejudice in assessing his claims. He contends his trial counsel were ineffective in (1) failing to adequately represent him at a pretrial continuance hearing and effectively preparing a diminished capacity defense; (2) failing to properly examine Drs. Hansen and Penningroth; and (3) deciding to disclose and utilize English papers written by Hart to bolster the diminished capacity defense.

Hart's first contention is the trial court applied too strict a standard of prejudice. We make an independent evaluation of the totality of the relevant circumstances; this is the equivalent of a de novo review. *Taylor v. State*, 352 N.W.2d 683, 684 (Iowa 1984). Hart bears the burden of proving by a preponderance of the evidence that (1) counsel failed to perform an essential duty, and (2) prejudice resulted. *State v. Risdal*, 404 N.W.2d 130, 131–32 (Iowa 1987).

Hart must overcome a presumption that his counsel is competent. *Strickland v. Washington*, 466 U.S. 668, 688–90, 104 S.Ct. 2052, 2065–66, 80 L.Ed.2d 674, 693–95 (1984); *Taylor v. State*, 352 N.W.2d at 685. Reasonableness under prevailing professional norms is the standard under which we measure counsels' performance. *State v. Risdal*, 404 N.W.2d at 132. That reasonableness is evaluated from counsels' perspective at the time of the alleged error in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305, 323 (1986).

■ If Hart can show counsel failed to perform an essential duty, he then must establish that he was prejudiced by demonstrating there is a reasonable probability but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. Speculative claims of prejudice, unsupported by the record, will not support an ineffectiveness claim. *See State v. Yaw*, 398 N.W.2d 803, 807 (Iowa 1987). We determine this is the standard the trial court applied. We find no error on this issue.

Hart next contends his trial counsel did not effectively represent him at the continuance hearing to gain sufficient time to enable the doctors to prepare for his defense, trial counsel did not see that Hart had a thorough and complete psychiatric examination to enable his expert witnesses to withstand cross-examination, and trial counsel did not properly examine the experts during trial so as to effectively present their professional opinions on the diminished responsibility defense.

■ The first, and what we determine to be the most crucial, inquiry on this issue is

what the postconviction record shows would have occurred differently at trial had the experts had more time. Defense attorneys retained as expert witnesses Dr. Thomas Hansen and Dr. R. Paul Penningroth, psychiatrists. On July 5, 1984, an Application for Authority to Transfer the Defendant for Psychiatric Examination was filed, and the same was granted on July 12, 1984. The order provided Hart would be transferred to St. Lukes Hospital in Cedar Rapids until the examination was completed. Hart was hospitalized and examined for approximately three weeks. Toward the end of this period the examining physicians indicated additional time was needed to prepare their findings and conduct further testing. Hart's attorney believed he needed sixty more days to prepare for trial. The court granted a one-week continuance.

Dr. Hansen admitted on cross-examination at Hart's first trial that he did not see certain reports because of the time factor and he did not have the time he would like to have had to prepare for testifying. However, this is not sufficient to show more favorable testimony would have been obtained. Trial counsel testified the doctors were as prepared for trial as they could have been, and while it was possible additional time for observations of Hart might have resulted in positive evidence, it was also possible it might have resulted in negative evidence.

■ Hart next contends his trial counsel did not adequately prepare for questioning of the doctors and the doctors were not ready for cross-examination. Both doctors testified by way of deposition in the postconviction proceeding. Dr. Hansen testified he saw Hart in consultation with Dr. Penningroth. He met with Hart, obtained a history, performed mental status examinations, spoke with Hart's mother, and reviewed available history. He saw reports of psychological tests but did not personally order any done. He had two meetings with Hart's trial attorney prior to trial. Dr. Penningroth saw Hart twenty-four or twenty-five times. He met with Hart's trial attorney for one to three hours before trial.

The medical testimony at trial attempted to show Hart had a diminished responsibility. Hart has attempted to show at the postconviction hearing stronger questions should have been asked. We find the testimony the doctors could give was adequately covered at the first trial. Even if that were not the case, we find trial counsel did an adequate job of presenting the motion for continuance. Such a motion is discretionary with the trial court. There is no showing his defense counsel was dilatory in preparing for trial. He immediately asked for the continuance when, after an extensive examination of Hart, the doctors sought more time. We disagree with Hart's contention that his trial attorneys rendered ineffective assistance of counsel.

■ Hart's final contention involves papers he wrote for a college English class. His trial counsel discovered the papers while conducting a private search of Hart's car. The English papers were in Hart's handwriting and detailed plans relating to the alleged murder of his aunt. Incriminating in nature, the English papers ultimately were entered into evidence. Hart contends his counsel was ineffective in allowing their admission and the decision to use the papers to bolster the diminished capacity defense cannot be viewed as reasonable under the circumstances of this case.

The attorney testified the decision to use the papers was made after extensive consideration of the pros and cons of disclosing the contents of the papers. Counsel and Hart ultimately determined it would be in Hart's best interest to turn the papers over to Dr. Penningroth for use in his evaluation. The attorney testified, in hindsight, he thought maybe he should not have disclosed the papers, but he testified he still was firm in his conviction that the English papers served as an important basis for the diminished capacity claim, and if he had to try the case again, he would use the same strategy.

A review of the evidence at trial shows the English papers played a part in the doctors' assessments of Hart. Dr. Hansen

testified the English papers provided him with information about Hart's state of mind prior to the murder. Hansen testified the papers served in part as a basis for his diagnosis and were the most significant piece of evidence used in forming his opinion. Dr. Penningroth also relied upon examination of the English papers.

The evidence against Hart was overwhelming. The English papers, though written by Hart, contained evidence that generally came in also through the State's evidence. Therefore, they only revealed facts already before the jury. We do not find the introduction of the English papers under this record to be ineffective assistance of counsel. We affirm.

AFFIRMED.