Filed 3/22/11 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2011 ND 50

In the Matter of Appeal of Grand Forks Homes, Inc.,

Continental Homes, Inc., Homestead Place, MDI 

Limited Partnership #35, and Faith & Hope, LP, Appellants

v.

Grand Forks Board of County Commissioners, Appellee

No. 20100197

In the Matter of Appeal of Terzetto Village, LLC, Appellant

v.

Grand Forks Board of County Commissioners, Appellee

No. 20100202

Appeals from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Debbie Gordon Kleven, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Russell John Melland, P.O. Box 5849, Grand Forks, N.D. 58206-5849, for appellants.

John Alan Warcup (argued), Special Assistant State’s Attorney, P.O. Box 12909, Grand Forks, N.D. 58208-2909, for appellee.

Grand Forks Homes, Inc. v. Grand Forks Bd. of County Comm’rs

Nos. 20100197 & 20100202

Crothers, Justice.

[¶1] Grand Forks Homes, Inc., and several other property owners (collectively “property owners”) appeal from the district court judgments affirming the Grand Forks County Board of Commissioners’ (“Board”) denial of their applications for abatement of real estate taxes and denying their motions for an extension of time and for a remand to the Board to consider additional evidence.  We conclude the district court did not abuse its discretion in denying the property owners’ motions.   We further conclude the Board did not misapply state law on tax exemptions for public charities and property used exclusively for charitable or other public purposes and did not act arbitrarily, capriciously or unreasonably in denying the applications for abatement of real estate taxes.  We affirm.

I

[¶2] Most of the property owners in these cases are nonprofit corporations owning and operating apartment complexes in Grand Forks and renting units to low-income families or to physically or mentally disabled persons.  Grand Forks Homes, Inc., is a North Dakota nonprofit corporation that owns Oak Manor Apartments, Cherry Height Apartments and LaGrave Place Apartments, which are all operated and managed by the Grand Forks Housing Authority.  Apartment occupants must meet low-income eligibility requirements.  Continental Homes is owned by Continental Homes, Inc., a North Dakota nonprofit corporation.  Continental Homes’ occupant services include a resident service coordinator and a learning center.  Tenants must meet low-income eligibility requirements.  Homestead Place, a North Dakota nonprofit corporation owning and operating Homestead Place Apartments, is designed to house elderly families and persons with disabilities.  Tenants must meet low-

income eligibility requirements, and occupant services include a resident services coordinator and a learning center.  Members of the board of directors of the Grand Forks Housing Authority comprise the board of directors of Homestead Place.

[¶3] Riverside Manor Apartments provides low-income housing and is owned by MIDI Limited Partnership #35.  Riverside Manor, LLC, is the general partner which owns one percent of the limited partnership, and National Tax Credit Fund 37 L.P. owns the remaining 99 percent.  Riverside Manor, LLC, is a wholly owned subsidiary of Grand Forks Homes, Inc., and has an option to purchase Riverside Manor Apartments.  Redwood, Oakwood, and Westwood are three separate apartment buildings owned by Faith & Hope, LP, a limited partnership in which the general partner, Grand Forks Homes, Inc., owns 99.9 percent and Faith and Hope, LLC, owns the remaining 0.1 percent.  Faith and Hope, LLC, is also a wholly owned subsidiary of Grand Forks Homes, Inc.  Occupancy in Redwood is limited to persons who are developmentally disabled.  Occupancy in Oakwood is limited to persons who are chronically mentally ill.  Occupancy in Westwood is limited to persons with physical disabilities.  All tenants must also meet low-income eligibility requirements.

[¶4] Terzetto Village, LLC, a limited liability company owned by Westend Terzetto’s, also a North Dakota nonprofit corporation, owns single-family residential lots in Grand Forks.  Terzetto Village provides low- to moderate-income families the opportunity to own homes.  At least 51 percent of its homes must be sold to low- to moderate-income families.

[¶5] These property owners filed applications for abatement of real estate taxes for 2006, 2007, and 2008 with the city of Grand Forks, claiming their properties were exempt from taxation under state law because they are used for charitable or other public purposes.  Following several hearings on the applications, the Gand Forks City Council (“Council”) recommended the abatement requests be denied.  The Board, based on the record before the Council, concurred with the Council’s recommendations.

[¶6] The property owners appealed the Board’s decision to district court.  The property owners also moved to extend time or stay the proceedings and to remand the case to the Board so the Board could consider the testimony offered during Council proceedings.  The district court denied the motions and affirmed the Board’s decision to deny the tax abatement requests.  The cases were consolidated for appeal.

II

[¶7] The property owners argue the district court erred in denying their motions to remand the cases to the Board for consideration of the transcripts or recordings of the hearings held before the Council.  The Council passed a motion that the transcripts be forwarded to the Board, but the transcripts or recordings were not available to the Board before it ruled on the abatement applications.  The property owners contend the transcripts or recordings were material evidence necessary for the Board to review before reaching its decision.

[¶8] Under N.D.C.C. § 28-34-01(3), a “court may order that . . . additional evidence be taken, heard, and considered by the local governing body” if the “additional evidence is material and . . . there are reasonable grounds for the failure to adduce such evidence in the hearing or proceeding had before the local governing body.”  A district court’s decision whether to order the taking of additional evidence under N.D.C.C. § 28-34-01(3) is discretionary.  
Grand Forks Hous. Auth. v. Grand Forks Bd. of County Comm’rs
, 2010 ND 245, ¶ 11.  “‘A district court abuses its discretion when it acts arbitrarily, capriciously, or unreasonably’ or when it misinterprets or misapplies the law.”  
Id.
 (quoting 
In re Pederson Trust
, 2008 ND 210, ¶ 12, 757 N.W.2d 740).

[¶9] Here, the district court found the transcripts or recordings of the hearings before the Council did not constitute material evidence necessary to review the decision to deny the abatement applications.  The court noted the Board gave the property owners an opportunity to present evidence in support of the applications and received all evidence and testimony they offered.  The court reasoned that if the property owners wanted the Board to consider the oral testimony presented in the Council proceedings, the property owners should have offered the testimony at the hearing before the Board.

[¶10] The district court’s decision is not arbitrary, capricious or unreasonable, and the court did not misapply the law.  We conclude the court did not abuse its discretion in denying the property owners’ motions to remand the cases to the Board for consideration of additional evidence.

III

[¶11] The property owners argue the Board erred in denying their applications for abatement of real estate taxes.

[¶12] “[W]e apply a very limited and deferential standard of review when considering an appeal from a decision of a local governing body.”  
Grand Forks Hous. Auth.
, 2010 ND 245, ¶ 6.

“When considering an appeal from the decision of a local governing body under N.D.C.C. § 28-34-01, our scope of review is the same as the district court’s and is very limited.  This Court’s function is to independently determine the propriety of the [Commission’s] decision without giving special deference to the district court decision.  The [Commission’s] decision must be affirmed unless the local body acted arbitrarily, capriciously, or unreasonably, or there is not substantial evidence supporting the decision.  ‘A decision is not arbitrary, capricious, or unreasonable if the exercise of discretion is the product of a rational mental process by which the facts and the law relied upon are considered together for the purpose of achieving a reasoned and reasonable interpretation.’”

 

Hagerott v. Morton County Bd. of Comm’rs
, 2010 ND 32, ¶ 7, 778 N.W.2d 813 (quoting 
Gowan v. Ward County Comm’n
, 2009 ND 72, ¶ 5, 764 N.W.2d 425) (internal quotations and citations omitted).  “A local governing body’s failure to correctly interpret and apply controlling law constitutes arbitrary, capricious, and unreasonable conduct.”  
Hector v. City of Fargo
, 2010 ND 168, ¶ 5, 788 N.W.2d 354.

A

[¶13] The property owners argue the Board erred in refusing to exempt their properties from taxation because the Board erroneously interpreted North Dakota law on tax exemptions for public charities and for property used exclusively for charitable or other public purposes.

[¶14] “All property in North Dakota is subject to taxation unless expressly exempted by law.”  
Grand Forks Hous. Auth.
, 2010 ND 245, ¶ 8; 
see also
 N.D.C.C. § 57-02-03.  The North Dakota Constitution exempts from taxation “property used exclusively for . . . charitable or other public purposes.”  N.D. Const. art. X, § 5.  Section 57-02-

08(8), N.D.C.C., also exempts from taxation “[a]ll buildings belonging to institutions of public charity . . . under the control of religious or charitable institutions, used wholly or in part for public charity, together with the land actually occupied by such institutions not leased or otherwise used with a view to profit.”  The “burden of establishing that property comes within the tax-exemption statute is upon the person or entity who claims the exemption” and “any doubt as to whether the property is used for charitable or benevolent purposes so as to exempt it from taxation must be resolved against the claimant.”  
Riverview Place, Inc. v. Cass County
, 448 N.W.2d 635, 640 (N.D. 1989).  “Each case where a claim for tax exemption is made . . . must be decided upon its own facts.”  
Y.M.C.A. of North Dakota State Univ. v. Board of County Comm’rs
, 198 N.W.2d 241, 244 (N.D. 1972).

[¶15] Several North Dakota cases have set the parameters for determining whether property is eligible for the charitable tax exemption under state law.  
In 
North Dakota Soc’y for Crippled Children and Adults v. Murphy
, 94 N.W.2d 343, 344 (N.D. 1959), the taxpayer, a nonprofit corporation organized for charitable purposes, sought a refund of taxes paid on the residence of its executive director.  The taxpayer contended the residence was exempt from taxation because the taxpayer was an institution of public charity and the property was “‘used wholly or in part for public charity.’”  
Id.
  Noting that the “property is used as a residence and for no other purpose,” 
id.
 at 345, this Court rejected the taxpayer’s argument and held:

“[T]he use contemplated by our statute is one that results in a benefit that has at least some direct and primary connection with the public charitable activities of the institution.  A monetary saving or a mere convenience is not such a benefit.  In this case the property is exclusively residential.  Its location with respect to the plaintiff’s charitable activities is remote.  While there may be an economical advantage and an administrative convenience in ownership, the connection between that ownership and the charitable activities of the plaintiff is nebulous and not of sufficient substance to support the claim of exemption.”

 

Id.
 at 347.

[¶16] In 
Y.M.C.A. of North Dakota State Univ.
, 198 N.W.2d at 243, the taxpayer sought a charitable tax exemption for two apartment buildings constructed to house college students.  The taxpayer, a charitable institution, rented the apartments at their fair market value in competition with privately owned apartments, and the income from the apartments that exceeded the cost of maintenance was used for the “general charitable purposes” of the taxpayer.  
Id.
  In affirming denial of a tax exemption to the taxpayer, this Court ruled the “mere fact that the apartments are owned by . . . a nonprofit corporation, is not sufficient to make them tax-exempt under our law.”  
Id.
 at 246.  The Court noted no charitable purpose existed under the circumstances because “[t]here is no evidence that the cost to the tenants is below ordinary rent charged by commercial enterprises for similar services furnished,” the “apartments compete with commercial housing facilities,” and “the property produced an income sufficient for the plaintiff to realize a profit each year.”  
Id.
  The Court said, “Property which is not used directly for the charitable and benevolent purposes of the [taxpayer], but is used for profit, is not exempt from taxation even though the profit derived from such property is, in fact, used to support the [taxpayer’s] charitable programs.”  
Id.
 at 247.

[¶17] In 
Evangelical Lutheran Good Samaritan Soc’y v. Board of County Comm’rs
, 219 N.W.2d 900, 902 (N.D. 1974), the taxpayer operated a “home for the aged and infirm” and claimed it was entitled to a tax exemption for that property.  The Home earned a profit, but the profit was reinvested into the Home for upkeep and expansion.  
Id.
 at 906, 907.  The Home employed a full-time activities director, and 64 percent of the residents were welfare recipients.  
Id.
 at 902, 903.  The Court noted the “average daily cost incurred by the Home for each resident, both welfare and non-

welfare recipient, exceeds the average daily payment received by the Home for each welfare patient.”  
Id.
 at 903.  Although the Home charged fees for its services and did not provide free care, no person would be denied admittance to or be removed from the Home for inability to pay.  
Id.
 at 908.  This Court, in affirming the granting of a tax exemption to the Home, said that “[t]he use of property for the care of the aged is generally recognized as a charitable use,” at least where “it has always been the policy of the Society that no person would be refused admittance because of financial inability to pay, and that no person would be removed from a Society Home because of inability to pay,” and that “64 percent of the Home’s residents were welfare recipients, for each of whom the Home received less than the average daily cost of care for such welfare recipient.”  
Id.
 at 906, 908.  Under these circumstances, the Court concluded the Home did not lose its charitable character, even though it charged for its services and did not provide free care.  
Id.
 at 909.

[¶18] In 
Riverview Place, Inc.
, 448 N.W.2d at 636, a “minimum-care, residential facility for the elderly” sought an exemption from taxes claiming it was a public charity within the meaning of N.D.C.C. § 57-02-08(8).  This Court, in reversing a decision granting a tax exemption to the facility, said that merely providing housing for the elderly is not a charitable use, where the residents had not demonstrated any need for considerable care or supervision and residents could be evicted if they were 60 days in default of their monthly occupancy fee.  
Id.
 at 637, 642.  
The Court summarized North Dakota law on charitable tax exemptions:

“[T]he determination of whether an institution falls within the exemption is, essentially, a two-step process in which it must be determined ‘whether the organization claiming the exemption is in fact a charitable one, and whether the property on which the exemption is claimed is being devoted to charitable purposes.’  The ownership of the property in question by an institution of public charity does not, by that fact alone, exempt the property from taxation.  Additionally, ‘[t]he mere fact that the services performed by a charitable corporation also are rendered by profit-making organizations [does] not of itself preclude [a charitable organization’s] right to tax exemption.’  Rather, ‘[i]t is the 
use
 made of the property . . . which determines whether the property is exempt from taxation.’  The property’s use must be devoted to charitable purposes, and it must actually be used in carrying out the charitable purposes of the organization claiming the exemption. Moreover, we have noted that when a charitable organization charges a fee for its services and operates at a small net profit which is reinvested back into the organization’s charitable operations, those facts do not automatically disqualify the entity’s property from an exemption on the basis that it was operated ‘with a view to profit,’ as the concept of charity encompasses ‘something more than mere almsgiving’ and therefore a ‘benevolent association is not required to use only red ink in keeping its books and ledgers.’”

 

Id.
 at 640 (internal quotations and citations omitted).  

[¶19] We use these basic guidelines in reviewing the Board’s denial of the property owners’ applications for tax abatements to determine if the denial was arbitrary, capricious or unreasonable.

B

[¶20] The Board adopted the Council’s recommendations to deny the property owners’ applications for tax abatements.  The Council found the property owners who provided rental housing were not entitled to tax exemptions because:

“Each owner of property . . . receives monthly rents from its rental operations and a governmental rental subsidy from the Housing Assistance Program which, when combined, equals or exceeds the fair market rents received by other property owners in the City of Grand Forks.

 

“The amount of rent which the property owner can charge a tenant is limited by the property owner’s participation in the Housing Assistance Program.

 

“Each owner of property . . . has a written policy to evict tenants who fail to pay rent or other charges due.

 

“Each owner of property . . . has a written policy of prohibiting tenants who are ineligible to participate in or who are unwilling to comply with government rent assistance programs.

 

“Each owner of property . . . is not supported by private donations.  

 

“Each owner of property . . . is in competition with other for profit property owners within the City of Grand Forks.

 

“Grand Forks Homes, Inc. allows access to its facilities by government or charitable organizations to provide services to its residents with the cost of such services being borne by such charitable organization or governmental entity.

 

“[A]side from each respective Board of Directors, none of the properties . . . are staffed by volunteers or other persons who donate their time.

 

“Elderly residents are not required to demonstrate a need for care in order to qualify for residency.

 

“The property owners . . . do not provide any care to disabled or elderly tenants.

 

“The property owners . . . do not provide any rental assistance or maintain any programs for tenants who are unable to afford rent.

 

“The property owners . . . do not provide goods or services free or at considerably reduced rates.”

 

[¶21] The Council found the property owner with the single family residential development was not entitled to a tax exemption because:

“[T]he properties . . . were vacant, undeveloped lots for years 2006 and 2007.  In 2008, [six] parcels . . . were developed with vacant single family dwellings.

 

“[T]he properties . . . were purchased by the property owner with funds provided by a federal Community Development Block Grant.

“[T]he property owner . . . is not supported by private donations.

 

“[T]he property owner . . . is in competition with other for profit property owners within the City of Grand Forks.

 

“[T]he properties . . . are available for sale on the open market to the highest bidder.

 

“[T]he property owner has made sales of similar nearby properties at market value[.]

 

“[T]he property owner does not provide goods or services free or at considerably reduced rates.”

 

[¶22] Even if the property owners are charitable organizations, the property owners failed to establish their properties are being devoted to charitable purposes.  The basic concept of charity is to provide a “gift” to assist those in need.  
See
 
Black’s Law Dictionary
 235 (6th ed. 1990); 
American Heritage Dictionary
 260 (2d College ed. 1985).  A consistent thread in our caselaw is that, to qualify for the charitable tax exemption, a property owner must, at the very least, be subject to the possibility of either providing assistance or forbearing to act under circumstances in which other owners of property would not be required either to act or to refrain from acting.  Those circumstances are not present in these cases.  The property owners receive fair market prices for their rental properties through governmental subsidies and sell property at its fair market value.  Indeed, Terzetto Village may sell almost one-half of its homes to persons who exceed low- to moderate-income levels.  The property owners compete with for-profit property owners in the Grand Forks area.  They do not provide any additional services to renters or home buyers, but only allow others to provide additional services at no cost to the property owners.  They will evict tenants who are unable to meet their rent obligations.

[¶23] Under our caselaw, restricting the use of property for charitable purposes such as providing housing for the handicapped, the elderly, or persons with low incomes does not alone suffice to qualify for the charitable tax exemption.  In these cases, the property owners are basically shielded from becoming the purveyors of any charity.  Rather, they serve as the conduit for the charity of governmental entities and others.  We do not hold that governmental subsidies automatically disqualify a property owner from successfully claiming the charitable tax exemption.  But the property owner must show a possibility that it may be called upon to forbear or provide services for which the property owner is not guaranteed recoupment.  The property owners failed to establish they are entitled to charitable tax exemptions under state law.

[¶24] The Board did not misapply state law because substantial evidence supports its decisions.  We conclude the Board did not act arbitrarily, capriciously or unreasonably in denying the property owners’ applications for abatement of real estate taxes.

IV

[¶25] We have considered the other arguments raised and conclude they either are unnecessary to the decision or are without merit.  The district court judgments are affirmed.

[¶26] Daniel J. Crothers

Mary Muehlen Maring

Carol Ronning Kapsner

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.